1
2
3
4
5
6

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOX HOLLOW OF TURLOCK OWNERS' ASSOCIATION, et al., <br><br>            Plaintiff, <br><br>            v. <br><br> RICHARD SINCLAIR, et al., <br><br>            Defendants; <br><br> AND OTHER CONSOLIDATED ACTIONS. | 1:03-CV-05439 OWW DLB <br><br> ORDER (1) DENYING DEFENDANTS' MOTION TO STRIKE (247); (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR MORE DEFINITE STATEMENT (251); AND (3) REFERRING PENDING SANCTIONS MOTION TO MAGISTRATE JUDGE BECK (258). |

## I.  INTRODUCTION

Defendants Mauctrst LLC, Capstone LLC, LairTrust LLC, Stanley Flake, as Trustee of Capstone Trust, Gregory Mauchley, Brandon Sinclair, and Richard Sinclair (collectively, "the Defendants") move to strike the Second Amended Complaint, filed by Plaintiff California Equity Management Group, Inc. ("CEMG") on August 26, 2005, for failure to comply with Federal Rule of Civil Procedure Rule 15(a).  The Defendants also move, under Federal Rule of Civil Procedure 12(e), to require Plaintiff to more definitely state the First, Second, Third, Tenth, Thirteenth, Fifteenth, Nineteenth, Twentieth, Twenty-First, Twenty-Second, and Twenty-Third Causes of Action in the Second Amended Complaint.

**1**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.   **MOTION TO STRIKE**

### A.   **Background**.

On April 7, 2005, CEMG moved for permission to file a second amended complaint to allege new causes of action, and to support with new theories, causes of action already alleged.  A May 24, 2005, order authorized amendment.  (Doc. 147.)  Counsel of record for both CEMG and Plaintiff Fox Hollow of Turlock Owners' Association ("the Association") filed a Second Amended Complaint the following day.  (Doc. 149.)  The caption inadvertently identified the Association as the filing party, not CEMG, as contemplated by the order of May 24.

The Defendants filed a Motion to Strike the Second Amended Complaint, on the grounds that the Association had not obtained leave to file it.  The attorneys subsequently stipulated to correct the erroneous caption, and agreed that CEMG would file a Second Amended Complaint.  An August 3, 2005, order gave CEMG until August 24, 2005, to file.  (Doc. 244.)

CEMG, however, did not file its Second Amended Complaint until August 26, 2005.  CEMG's counsel states that he was on vacation on August 24, and had left to his staff the task of filing the Second Amended Complaint, which they did not accomplish.

### B.   **Legal Standard for Motion to Strike**.

Federal Rule of Civil Procedure 15(a) reads, in relevant part:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so

**2**

1   amend it at any time within 20 days after it is served.

2   <u>Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires</u>.

3

4   (emphasis added).

5   Defendants argue that the district court's grant to CEMG of

6   leave to amend expired with the expiration of the 15-day period

7   allowed in its order, so that the late amendment was without

8   leave and is without legal effect.

9   A pleading cannot be amended without leave of court or

10   consent of the opposition, and where (as here) such leave or

11   consent is required and not obtained, the amendment is a nullity.

12   *See, e.g.*, *United States ex rel. Mathews v. HealthSouth Corp.*,

13   332 F.3d 293, 296 (5th Cir. 2003); Wright, Miller & Kane, *Federal*

14   *Practice and Procedure* § 1484.  However, CEMG's Opposition to the

15   Motion to Strike may fairly be considered a motion for the

16   enlargement of the period within which to file the Second Amended

17   Complaint.

18   In the Ninth Circuit, there is no rigid rule against

19   allowing a late filing attributable to attorney negligence,

20   particularly where no prejudice results.  *Pincay v. Andrews*, 389

21   F.3d 853, 860 (9th Cir. 2004)(citing *Pioneer Inv. Serv. v.*

22   *Brunswick Assoc. Ltd P'ship*, 507 U.S. 380, 395 n. 14 (1993)).

23   Rather, a district court entrusted with discretion to weigh the

24   equitable factors enunciated by the Supreme Court in *Pioneer*.

25   These include, "[1] the danger of prejudice to the [opposing

26   party], [2] the length of the delay and its potential impact on

27   judicial proceedings, [3] the reason for the delay, including

28   whether it was within the reasonable control of the movant,

**3**

1  [4] and whether the movant acted in good faith.  507 U.S. at 395.

2  Here, where there was no showing of any prejudice or bad faith

3  and the delay was negligible(only three days), striking the

4  complaint is not warranted.

5      The motion to strike is **DENIED.**

6

7              **III.   MOTION FOR A MORE DEFINITE STATEMENT**

8      **A.   Summary of the Motion**.

9      The Second Amended Complaint alleges twenty-three separate

10 causes of action.  The Defendants request more definite statement

11 of eleven of these.

12     CEMG's First, Second, and Third Causes of Action request

13 equitable reformation of certain deeds of trust.  The First Cause

14 of Action alleges mutual mistake as the grounds for the request;

15 the Second, unilateral mistake; and the Third, fraud.  The

16 Defendants claim that CEMG fails to plead fraud and mistake with

17 particularity.

18     California Business and Professional Code § 17200 ("Unfair

19 competition; prohibited activities") forms the basis for CEMG's

20 Tenth, Thirteenth, and Fifteenth Causes of Action.  The

21 Defendants seek more definite statements of these claims on the

22 grounds that in their present form the allegations do not specify

23 whether the acts by which the Defendants allegedly violated a

24 statute were unlawful, unfair, or fraudulent.

25     The Defendants argue that the Nineteenth Cause of Action,

26 which alleges violations of the Racketeer Influenced and Corrupt

27 Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, does not

28 plead racketeering activity with requisite particularity.

**4**

1    The Twentieth Cause of Action seeks an accounting of
2  deposits and rents received.  Defendants argue that the Plaintiff
3  should be required to state the period for which it seeks an
4  accounting.

5    Finally, Defendants claim that Causes of Action Twenty-One,
6  Twenty-Two, and Twenty-Three –- for breach of contract, money had
7  and received, and bad faith retention of security deposit,
8  respectively –- fail to allege whether the contract is written or
9  oral, and move the court upon this basis to require the Plaintiff
10 to make them more definite.

11   **B.    Motion for a More Definite Statement as to the First,
         Second, and Third Causes of Action**.

12        **1.    Overview of the First, Second, and Third Causes of
13            Action.**

14   CEMG alleges that, in the course of developing the Fox
15 Hollow subdivision ("Fox Hollow," or "the subdivision"), the
16 Defendants sought refinancing for certain loan obligations which
17 were secured by deeds of trust on each lot of the subdivision.
18 (Second Amended Complaint ("SAC") ¶42.)  The lots were appraised
19 as part of the refinancing process, and the values assigned were
20 based in large measure on the assumption that each unit would
21 have access or legal right to at least one garage appurtenant to
22 the lot on which the unit was located.  (SAC ¶43.)  Most of Fox
23 Hollow's twenty lots featured a garage for each housing unit.
24 For Lots 2, 6, 7, 8, 9, 10, and 18, there was also one garage
25 sited on a second lot.  (SAC ¶36.)  The Defendants secured
26 refinancing on the lots, and deeds of trust were drafted.  The
27 "Garage Lots," identified as Lots 2A, 6A, etc., however, were <u>not</u>
28 mentioned in the trust deeds, despite the fact that their

**5**

1  corresponding housing-unit lots' appraisal values depended on
2  access to the garages.

3       The Defendants later defaulted on their loans, and the
4  lenders foreclosed upon the Fox Hollow lots, including Lots 2, 6,
5  7, 8, 9, 10, and 18.  (SAC ¶50.)  After purchasing the lenders'
6  rights to the lots at a foreclosure sale, CEMG discovered that
7  the deeds of trust did not encumber the Garage Lots, which were
8  not collateral for the new loan.  (SAC ¶53.)

9       CEMG seeks equitable reformation of the trust deeds, as well
10 as the deeds of conveyance, to include the Garage Lots.  (SAC
11 ¶55.)  CEMG advances three alternative legal theories in support
12 the requested relief.

13      In its First Cause of Action, CEMG seeks reformation of the
14 trust deeds on the grounds of <u>mutual</u> mistake.  (SAC ¶48.)
15 Specifically, CEMG alleges that the lenders and the Defendants
16 agreed and intended that the trust deeds should include the
17 Garage Lots among the collateral for the prospective refinancing,
18 that these lots were included in the original grant deeds for
19 later individual lots after the subdivision was established, but
20 that the title company to which they left the task of drafting
21 the relevant conveyance and security documents omitted the Garage
22 Lots from the legal description through error.  (SAC ¶¶ 45-49.)
23 Due to this clerical scrivener's error, the instruments do not
24 reflect the true understanding of the parties.  (SAC ¶51.)  In
25 addition, CEMG alleges that "sometime after the Lenders' Deeds of
26 Trust were executed and delivered to the Lenders, the
27 Defendants...became aware of the mutual mistake regarding the
28 legal description in such deeds of trust," and nonetheless

**6**

"failed to notify the Lenders of the mutual mistake or to take any action to correct the error." (SAC ¶54.) Finally, CEMG argues that the Defendants should be estopped from claiming that the trustee deeds and deeds of trust did not incorporate the Garage Lots into the collateral, on the grounds that the Defendants benefitted from the real property appraisals which included the Garage Lots, which facilitated refinancing. (SAC ¶56.)

In its Second Cause of Action, CEMG seeks reformation of the trust deeds on the grounds of <u>unilateral</u> mistake with knowledge. (SAC ¶¶61-62.) CEMG alleges that the lenders drafted the deeds of trust, and each failed to include the Garage Lot or Lots as part of the collateral. (SAC ¶61.) CEMG further alleges that the Defendants, "and each of them," knew of the lenders' mistake when the deeds of trust were executed, but failed to raise the issue. (SAC ¶62.)

In its Third Cause of Action, CEMG seeks reformation of the trust deeds on the grounds of <u>fraud</u>, alleging that the Defendants actively misled the lenders into believing that the collateral for the trust deeds, as drafted, included the Garage Lots. (SAC ¶65.)

### 2.   Analysis of the First, Second and Third Causes of Action.

Federal Rule of Civil Procedure Rule 9(b) demands that, when allegations of fraud or mistake are made, the circumstances constituting the alleged fraud must be stated with "particularity." The allegations must be specific enough to give Defendants notice of what they are alleged to have done, so that

they may defend against the accusations. *Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995).[1]

Actions for the reformation of a contract is governed by California Civil Code Section 3399, which provides:

> When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.

*See also Shupe v. Nelson*, 254 Cal. App. 2d 693 (1967) (in action based on mistake, "aggrieved party" under § 3399 need not be an original party to transaction).

With respect to the First Cause of Action, which alleges mutual mistake on the part of the lenders, the Defendants, and a scrivener's error by the title company, the SAC does not allege that the responsibility for the scrivener's error lies with the

---

[1]   The Defendants point out that CEMG states these causes of action on information and belief only.  Though it is true that CEMG avers its first three causes of action only on "information and belief," *see, e.g.*, SAC, ¶¶ 43, 47, this alone is not fatal to the complaint:

> Allegations of the circumstances of a fraud based on information and belief, which are commonplace and often a necessity in many litigation contexts, usually do not satisfy the particularity requirement of Rule 9(b), unless accompanied by a statement of the facts upon which the pleader's belief is founded, but the application of the rule may be relaxed as to matters peculiarly within the opposing party's knowledge that the pleader is not privy to at the time the document is being drafted.

5A Wright & Miller, Federal Practice and Procedure: Civil 3d § 1298.

Defendants or the lenders.[2]   A mutual mistake occurs where both
parties share the same factual misconception.  *Sutter Youth Org.,*
*v. Borsen*, 214 Cal. App. 2d 676, 680 (1963).   The claim for
mutual mistake is sufficiently definite to enable the Defendants
to frame a response.   The motion for a more definite statement is
**DENIED** as to the First Cause of Action.

The Second Cause of Action is for unilateral mistake, which
requires that the plaintiff be mistaken and the other (non-
mistaken) party to the instrument suspected or had knowledge of
the mistake at the time the instrument was drawn up.   *See* Cal.
Civ. Code § 3399; *see Pac. State Bank v. Greene*, 110 Cal. App.
4th 375, 389 (2003).   At oral argument, the court erroneously
observed that the second amended complaint fails to allege that
the non-mistaken party to the original instrument had knowledge
of the mistake.   However, Paragraph 62 does allege that
Defendants knew of the mistake at the time the deeds were
executed.   The motion for a more definite statement is **DENIED** as
to the Second Cause of Action.

The Third Cause of Action is for reformation on the ground
that the deed was executed as a result of fraud.   Averments of
fraud must be accompanied by the "who, what, when, where, and
how" of the misconduct charged.   A plaintiff must set forth more
than the neutral facts necessary to identify the transaction.
The plaintiff must set forth what is false or misleading about a

---

[2]    This necessarily implicates that title company, which
is not a party to this lawsuit.   The title company, potentially
responsible party, is not identified.   It is hard to understand
how the Plaintiff has not ascertained the identity of the title
company.

1    statement, and why it is false.  *Vess v. Ciba-Geigy Corp. USA*,

2    317 F.3d 1097, 1106 (9th Cir. 2003) (citations and internal

3    quotation marks omitted).  Here, Plaintiffs allege that the

4    "failure of the Lender Deeds of trust to contain a legal

5    description of the Garage Lots resulted from the false

6    representations of Defendants...to the Lenders that the Lender

7    Deeds of Trust secured the Lenders against all of the property

8    constituting the Lot or Lots on which they were securing loans,

9    and the intentional omission of Defendants...to inform the

10   Lenders that the Lenders Deeds of Trust were not secured against

11   the Garage Lots."  (SAC ¶65.)  This plainly describes the nature

12   of the allegedly fraudulent representations and omissions,

13   putting Defendants on notice of "what is false or misleading" and

14   "why it is false."  Plaintiffs further allege that the false

15   representations and omissions were knowingly and intentionally

16   made by Defendants "in that Defendants were the original owners

17   of the Fox Hollow Subdivision."  (*Id.* at ¶66.)  This sufficiently

18   describes who made was involved in the alleged fraud.  The motion

19   for a more definite statement as to the Third Cause of Action is

20   **DENIED.**

21          **C.    Motion For a More Definite Statement as to the Tenth,
                Thirteenth, and Fifteenth Causes of Action**.

22
                **1.    Summary of the Tenth, Thirteenth, and Fifteenth
23                    Causes of Action.**

24          CEMB alleges that it acquired fee simple title to lots 11

25   and 18 of the subdivision from the GMAC Mortgage Corporation

26   ("GMAC").  (*See* SAC ¶25.)  These lots (the "GMAC Lots") "were

27   subject to valid and enforceable written residential lease

28   agreements (the 'GMAC Leases')."  (SAC ¶82.)

1    CEMG alleges that the Defendants intentionally interfered
2    with CEMG's rights under these leases by (a) representing to the
3    tenants of the GMAC Lots that Defendants "were the owners of such
4    lots and were entitled to the deposits and rents under the GMAC
5    Leases," and (b) collected rents from the tenants under the GMAC
6    Leases after the date on which title was transferred to Plaintiff
7    and continuing through the present time.  (SAC ¶84, Eighth Cause
8    of Action.)  CEMG claims that the Defendants' collection of
9    deposits and rents also constitutes conversion.  (SAC ¶87, Ninth
10   Cause of Action.)

11       The Tenth Cause of Action alleges that the false
12   representations and conversion of deposits and rents constitute
13   an "unfair trade practice" under Business and Professions Code
14   Section 17200.  (SAC ¶91.)

15       In the Eleventh and Twelfth Causes of Action, which are not
16   challenged here, CEMG alleges that the Defendants intentionally
17   interfered in a similar manner with its lot 7 lease (SAC ¶¶92-
18   99), and converted to their own use the rents due to it
19   thereunder (SAC ¶¶100-102), respectively.  The Thirteenth Cause
20   of Action alleges that this intentional interference with
21   contract and conversion constitutes an unfair trade practice
22   under § 17200.  (SAC ¶¶103-104.)  The Fourteenth Cause of Action,
23   which is not challenged here, alleges that the Defendants
24   slandered title to certain Fox Hollow subdivision lots.  (SAC
25   ¶¶105-110.)  The Fifteenth Cause of Action alleges that this
26   slander constitutes an unfair trade practice under § 17200.  (SAC
27   ¶¶111-112.)

28

**11**

1

**2.   Analysis of the Motion for a More Definite Statement as to the Tenth, Thirteenth, and Fifteenth Causes of Action.**

2

3    California's unfair competition law ("UCL"), Cal. Bus. &

4  Prof. Code § 17200, et seq., prohibits "unfair competition" which

5  is defined to "include any unlawful, unfair[,] or fraudulent

6  business act or practice...." "Because the statute is framed in

7  the disjunctive, a business practice need only meet one of the

8  three criteria to be considered unfair competition." *McKell v.*

9  *Washington Mut. Inc.*, 142 Cal. App. 4th 1457, 1471 (2006).

10    The purpose of the UCL "is to protect both consumers and

11  competitors by promoting fair competition in commercial markets

12  for goods and services." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939,

13  949 (2002). The scope of the statute is broad, including

14  "anything that can properly be called a business practice and

15  that at the same time is forbidden by law." *Perfect 10, Inc. v.*

16  *CCBill, LLC*, 340 F. Supp. 2d 1077, 1108 (C.D. Cal. 2004).

17    "Although the unfair competition law's scope is sweeping, it

18  is not unlimited." *Cel-Tech Communications, Inc. v. Los Angeles*

19  *Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999). Its purpose is

20  to permit courts to enjoin on-going wrongful business conduct to

21  enable courts to "deal with innumerable new schemes which the

22  fertility of man's invention would contrive." *Cel-Tech*

23  *Communications*, 20 Cal. 4th at 181 (1999)(emphasizing the fact

24  that § 17200 is an equitable remedy). With this in mind, the

25  California Supreme Court has narrowed the definition of the term

26  "unfair" to mean "conduct that threatens an incipient violation

27  of an antitrust law, or violates the policy or spirit of one of

28  those laws because its effects are comparable to or the same as a

**12**

violation of the law, or otherwise significantly threatens or harms competition." *Id.* at 187.  However, *Cel-Tech* did not narrow the term "unlawful," *see Kearny v. Salomon Smith Barney*, *Inc.*, 39 Cal. 4th 95, 131 (2006).  "Unlawful" acts or practices include any which are "forbidden by law, be it civil or criminal, federal, state or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994).  Nor did *Cel-Tech* address or narrow the term "fraudulent." *See Cel-Tech*, 20 Cal. 4th at 187 n.12 (acknowledging that the holding does not apply to allegations of fraudulent or unlawful business practices).  However, the second amended complaint does not explain whether Plaintiffs are alleging an "unfair" business act or practice,[3] an "unlawful" one or a "fraudulent" one.

Remedies under the UCL are limited injunctive relief or restitution. *Valdez v. Himmelfarb,* 144 Cal. App. 4th 1261, 1267 (2006).  The complaint is also unclear as to the remedies sought by these claims.

The motion for a more definite statement as to the Tenth, Thirteenth and Fifteenth Claims is **GRANTED**, but Plaintiffs are reminded that Federal Rule of Civil Procedure 11 requires good-faith bases for these claims to be re-alleged.

D.   **The Nineteenth Cause of Action**.

CEMG has conceded that its Nineteenth Cause of Action, which alleges a civil RICO claim, needs to be stated more definitely.

---

[3]   A single act of misconduct may form the basis of a UCL suit. *Madrid v. Perot Systems Corp.*, 130 Cal. App. 4th 440, 464 (2005).

**13**

Defendants' motion is **GRANTED** as to this cause of action.

In re-pleading this cause of action, CEMG must meet RICO's civil action requirements. A RICO civil complaint must at least allege: (1) that a 'person' within the scope of the statute (2) has utilized a 'pattern of racketeering activity' or the proceeds thereof (3) to infiltrate an interstate 'enterprise' (4) by (a) investing the income derived from the pattern of racketeering activity in the enterprise; (b) acquiring or maintaining an interest in the enterprise through the pattern of racketeering activity; (c) conducting the affairs of the enterprise through the pattern of racketeering activity; or (d) conspiring to commit any of the above acts. 18 U.S.C. § 1962. A plaintiff in a private, civil RICO action must also allege that he was injured in his business or property 'by reason of' one of the foregoing. 18 U.S.C. § 1964[c]. The racketeering enterprise must be separate from the racketeering acts or activity. *Chang v. Chen*, 80 F.3d 1293, 1298-99 (9th Cir. 1996).

Section 1961 enumerates acts which are each considered to be acts of "racketeering activity" and which, in RICO parlance, are often called the "predicate acts." The most important predicate acts for RICO violation are: (1) "any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in Section 102 of the Controlled Substances Act), which is chargeable under State Law and punishable by imprisonment for more than one year;" (2) any of more than twenty types of conduct indictable under enumerated provisions of the United States Code, ranging from mail fraud and

wire fraud, through robbery and extortion, to white slave trade;
or (3) any offense involving fraud "connected with" a bankruptcy
case, "fraud in the sale of securities," or any act related to a
controlled substance or listed chemical "punishable" under
federal law.   18 U.S.C. § 1961; *see generally Wagh v. Metris
Direct, Inc.*, 363 F.3d 821 (9th Cir. 2003).   No such predicate
acts are alleged in the complaint.

The motion for a more definite statement as to the
Nineteenth Cause of Action is **GRANTED**.

**E.    The Twentieth Cause of Action**.

The Twentieth Cause of Action seeks an accounting of
deposits and rents paid.   However, CEMG specifies neither the
period for which it seeks the accounting, nor if it seeks an
accounting of any sums more than deposits taken and the amount of
rents paid under leases.   Defendants are entitled to be apprised
of what must be accounted for and for what period.   The motion
for a more definite statement is **GRANTED** with regard to the
Twentieth Cause of Action.

**F.    The Twenty-First, Twenty-Second, and Twenty-Third
        Causes of Action**.

The Twenty-First, Twenty-Second, and Twenty-Third Causes of
Action are for breach of contract, money had and received, and
bad faith retention of tenants' security deposits.   Defendants
seek more definite statements of these causes of action on the
grounds that CEMG fails to allege whether the contracts upon
which the causes of action are based are oral or written.

CEMG responds by referring the court to the Eighth, Tenth,
and Eleventh Causes of Action, which, according to CEMG, "each
allege written residential lease agreements."   Mem. in Opp. at 9.

The lots described in those claims are not the same as those alleged in the Twenty-First through Twenty-Third causes of action.

The Defendants' motion with regard to these causes of action is **GRANTED.**  Plaintiffs shall re-plead the Twenty-First, Twenty-Second, and Twenty-Third causes of action in a manner that indicates the nature of the contract at issue.

### VI.   CONCLUSION

For the reasons set forth above:

(1)   Defendants' motion to strike is **DENIED.**

(2)   Defendants' motion for a more definite statement is **GRANTED IN PART AND DENIED IN PART.**  The motion is **DENIED** as to the First, Second, and Third Causes of Action, and **GRANTED** as to the Tenth, Thirteenth, Fifteenth, Nineteenth, Twentieth, Twenty-First, Twenty-Second, and Twenty-Third Causes of Action.

(3)   As indicated during oral argument, the still-pending motion to amend/correct a prior sanctions order (Doc. 258) is referred back to Magistrate Judge Dennis L. Beck, who issued the original sanctions order.  If the parties are mutually satisfied that there is no further need for this motion to be heard, they are instructed to file a stipulation taking the motion off calendar.

IT IS SO ORDERED.

**Dated:   March 30, 2007**          _____**/s/ Oliver W. Wanger**_____
b2e55c                              UNITED STATES DISTRICT JUDGE