1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **RICHARD SINCLAIR, et al.** <br><br>       **Plaintiffs,** <br><br>    **v.** <br><br> **FOX HOLLOW OF TURLOCK OWNERS ASSOCIATION, et al.** <br><br>       **Defendants.** | **1:03-cv-05439-OWW-DLB** <br><br> **MEMORANDUM DECISION REGARDING DEFENDANTS' MOTION TO DISMISS (Doc. 422)** |

**I. INTRODUCTION.**

This case is a consolidation of three actions: An action commenced by Plaintiff Fox Hollow of Turlock Homeowners' Association ("Fox Hollow") against Richard Sinclair, Brandon Sinclair, Gregory Mauchley, Lairtrust, LLC, Capstone, LLC, Mauctrst, LLC, and Stanley Flake as Trustee of Capstone Trust, Case No. CV-F-03-5439 OWW/DLB ("Fox Hollow Action"); an action commenced by California Equity Management Group, Inc. ("CEMG") against Mauctrst LLC, Gregory Mauchley, Diana Mauchley, Lairtrust LLC, Richard Sinclair, Deborah Sinclair, Sinclair Enterprises, Inc., Capstone, LLC, Brandon Sinclair, Stanley Flake, and Stanley Flake as Trustee of the F. Hanse Trust and of the Julie Insurance Trust Case No. CVF- 03-5774 OWW/DLB ("CEMG Action"); and an action commenced by Lairtrust LLC, Mauctrst LLC, and Capstone LLC against

**1**

Fox Hollow, Andrew Katakis, and California Equity Management Group, Inc. in the Stanislaus County Superior Court, Case No. 322675 ("Lairtrust Action"), removed to this Court and consolidated with the Fox Hollow and CEMG Actions by Order filed on October 6, 2003 ("Consolidated Federal Actions").

Fox Hollow filed its original complaint in this action on April 4, 2003. Fox Hollow filed a first amended complaint ("Fox Hollow's FAC") on July 15, 2003. On June 5, 2003, CEMG filed its initial complaint in this action. CEMG filed a third amended complaint ("CEMG TAC") on June 22, 2007. (Doc. 300).

On July 21, 2010, Fox Hollow and CEMG were granted leave to file a consolidated amended complaint. (Doc. 409). Fox Hollow and CEMG ("Plaintiffs") filed the operative consolidated complaint ("Consolidated Complaint") on July 21, 2010. (Doc. 410).

Defendants Capstone LLC ("Capstone"), Lairtrust LLC ("Lairtrust"), and Mauctrst LLC ("Mauctrst") (collectively, "Defendants") filed a motion to dismiss the Consolidated Complaint on August 10, 2010. (Doc. 422). Plaintiffs filed opposition to the motion to dismiss on October 8, 2010. (Doc. 437). Defendants filed a reply to Plaintiffs' opposition on October 18, 2010. (Doc. 439). On November 8, 2010, the court conducted a hearing on Defendants motion to dismiss.[1]

///

///

---

[1]  The November 8 hearing also encompassed Plaintiffs' motion to dismiss the cross-complaint filed by Defendants Gregory Mauchly, Brandon Sinclair, and Richard Sinclair and Plaintiffs' alternative motion for more definite statement. (Docs. 431, 432, 434, 435). Plaintiffs' motions will be resolved in a separate memorandum decision.

1

## II. **FACTUAL BACKGROUND**.

This action arises out of an alleged fraudulent scheme concerning a thirty-five unit town home complex in Turlock, California, known as Fox Hollow of Turlock ("the Property"). Plaintiff Fox Hollow is the home owners' association ("HOA") for the Property.  Plaintiff CEMG is the record owner of lots contained within the Property, the successor in interest to lenders who extended loans secured by lots within the Property, and the assignee of the rights of certain tenants who entered into leases for units contained in the Property.  Mauctrst, Lairtrust, and Capstone are limited liability companies that were allegedly used to convert HOA funds, effect property transfers, obtain loans, prosecute dilatory lawsuits, and to carry out other parts of the alleged schemes that form the basis for the Racketeer Influenced and Corrupt Organizations Act ("RICO")[2] claims advanced in the Consolidated Complaint.

**Fox Hollow's FAC**

Fox Hollow filed its FAC on July 15, 2003. (Motion to Dismiss, Ex. A).  Fox Hollow's FAC named Richard Sinclair, Brandon Sinclair, Gregory Mauchley, Mauctrst LLC, Capstone Trust, Stanley Flake, Lairtrust LLC, Capstone LLC, and Does 1 through 10 as Defendants. Fox Hollow's FAC contained the general allegation that:

> at all times material hereto, each defendant named in this complaint was the agent, employee, or servant of the other defendants, and was at all times material hereto acting within the course and scope of said agency, employment, or servitude with the permission and consent of the other defendants

---

[2] 18 U.S.C. § 1961 *et seq.*

**3**

(Fox Hollow's FAC at 3).[3]

According to Fox Hollow's FAC, in 1993, Defendant Richard Sinclair represented to the Turlock City Counsel that he was the owner of the Property and applied to convert the Property from an apartment complex into a subdivision comprised of air and space condominiums. (Fox Hollow FAC at 4). The City of Turlock approved the proposed subdivision, subject to requirements imposed by the City's Department of Building and Safety. (Fox Hollow FAC at 4). Richard Sinclair failed to obtain the permits necessary to effect the proposed subdivision. (Fox Hollow FAC at 4).

Gregory Mauchley and Mauctrst, LLC acquired the Property in 1998 as a multifamily housing project. (Fox Hollow FAC at 4). Neither Mauchley, Mauctrst, nor any other owner of the property had obtained the permits necessary to effect the proposed subdivision at the time Fox Hollow filed the FAC. (Fox Hollow FAC at 4). Although the proposed subdivision was never completed, Gregory Mauchley, Mauctrst LLC, Richard Sinclair, and other Defendants conspired to borrow funds secured by individual lots within the Property from lenders such as GMAC Mortgage, Bank One, Advanta Mortgage, ContiMortgage, and HFC. (Fox Hollow FAC at 5). Mauchley, Mauctrst LLC, and other Defendants collectively obtained nineteen separate loans secured by nineteen individual lots containing multiple units. (Fox Hollow FAC at 5). Gregory Mauchley and Mauctrst encountered difficulty in making payments on loans secured by the Property, and in or about August 2000,

---

[3] Although this broad, conclusory allegation of agency is insufficient under contemporary pleading standards, Fox Hollow's FAC pre-dated recent refinements to the Supreme Court's pleading jurisprudence.

**4**

1  financial instructions began to initiate foreclosures on the real
2  property collateral.  (Fox Hollow FAC at 5).

3      After an unsuccessful attempt at reorganization pursuant to
4  Chapter 11 of the U.S. Bankruptcy Code in the year 2000, Mauctrst
5  sought to transfer the Property to Gregory Mauchley.  (Fox Hollow
6  FAC at 5).   Additionally, Richard Sinclair, as attorney for
7  Mauctrst LLC and Gregory Mauchley, filed numerous lawsuits against
8  lenders in order to delay or reverse foreclosure sales in June,
9  July, and August of 2000.  (Fox Hollow FAC at 5-6).

10     In or about July 2000, purporting to act as the Board of
11 Directors for the Fox Hollow HOA, Richard Sinclair, Brandon
12 Sinclair, and Gregory Mauchley entered into a contract appointing
13 Richard Sinclair as the attorney for the HOA.  (Fox Hollow FAC at
14 6).  In fact, the HOA was not established until December 6, 2000,
15 the date on which Articles of Incorporation were filed with the
16 California Secretary of State.  (Fox Hollow FAC at 8).  Further, no
17 common area was ever deeded to the HOA as required by the
18 Declaration of Covenants, Conditions, and Restrictions ("CC&R's")
19 applicable to the Property; instead, the common area was deeded
20 from Stanley Flake to Gregory Mauchley and then to Mauctrst LLC.
21 (Fox Hollow FAC at 6).

22     Although the HOA was not established until December 2000, in
23 October of 2000, Richard Sinclair began attempting to collect HOA
24 dues of $300.00 per month per parcel.  (Fox Hollow FAC at 6).
25 Richard Sinclair used monies received as HOA dues to fund Mauchley
26 and Macustrst's foreclosure litigation, to pay himself legal fees,
27 to pay management fees to himself and to his son Brandon Sinclair,
28 and to purchase insurance for Mauctrst.  (Fox Hollow FAC at 7).

**5**

Richard Sinclair did not use the HOA dues collected for the maintenance and care of the Property. (FAC at 7). Richard Sinclair did not attempt to collect any monthly dues for units owned by Mauchley or Mauctrst. (Fox Hollow FAC at 7).

On February 1, 2001, Bank One National Association, an owner of units at the Property through foreclosure, sued the Fox Hollow HOA alleging, *inter alia*, failure to maintain the Property and breach of fiduciary duty. (Fox Hollow FAC at 8). The Fox Hollow HOA was subsequently placed in receivership from March 2001 through October 2002. (Fox Hollow FAC at 9). Neither Mauchley, Mauctrst, nor Richard Sinclair paid HOA dues for the units they owned despite the receiver's collection attempts. (Fox Hollow FAC at 9). On October 1, 2002, the Fox Hollow HOA held an election and elected new members of the Board of Directors. (Fox Hollow FAC at 9).

Fox Hollow's FAC asserted a RICO claim against Richard Sinclair and "Does 1 through 10." (Fox Hollow FAC at 9). Specifically, the FAC averred that Richard Sinclair operated the Fox Hollow HOA as an enterprise engaged in a pattern of extortion and mail fraud, and breach of his fiduciary position to obtain secret profits. (Fox Hollow FAC at 9-11). The gravamen of the RICO claim asserted in Fox Hollow's FAC was that the HOA collected dues to which it was not entitled and used monies collected as dues for improper purposes such as paying Richard Sinclair legal fees and diverting funds to Brandon Sinclair, Gregory Mauchley, and Mauctrst. (Fox Hollow FAC at 9-11). Fox Hollow's FAC also asserted a conspiracy cause of action that alleged that "all defendants" conspired to use fraudulently use the HOA for their collective benefit. (Fox Hollow FAC at 17).

1    Fox Hollow's FAC asserted a claim for unjust enrichment
2  against Richard Sinclair, Brandon Sinclair, Mauctrst LLC, and "Does
3  1 through 10" arising out of Defendants' failure to pay dues and
4  conversion of monies paid by others as dues. (Fox Hollow's FAC at
5  16-18).

6  **CEMG's TAC**

7    CEMG filed its TAC on June 22, 2007.[4]  CEMG's TAC named
8  Mauctrst LLC, Gregory Mauchley, Capstone LLC, Stanley M. Flake,
9  Brandon Sinclair, Lairtrust LLC, and Richard Sinclair, among
10  others, as Defendants. (CEMG TAC at 1). CEMG's TAC asserted that,
11  at all times relevant, Mauctrst was the alter ego of Gergory
12  Mauchley, Capstone LLC was the alter ego of Brandon Sinclair, and
13  that Lairtrust was the alter ego of Richard Sinclair. (CEMG TAC at
14  4-5).

15    CEMG's TAC alleged that Defendants were the owners and
16  original developers of the Fox Hollow Property. (CEMG TAC at 8).
17  Beginning in or about July 1998, Defendants sought to refinance
18  certain loan obligations secured by deeds of trust on each lot.
19  (CEMG TAC at 10). After first seeking refinancing from a single
20  lender, Defendants decided to refinance individual lots with
21  several different lenders. (CEMG TAC at 10). Each loan was
22  secured by a deed of trust in first position on the lot or lots
23  described therein. (CEMG TAC at 11). Some of the deeds of trust
24  executed and delivered to lenders did not include descriptions of
25  garage spaces that were part of the lots. (CEMG TAC at 12-13). From
26  1999 through 2001, Defendants defaulted in their obligations under

27

28  [4] Neither Defendants' motion to dismiss the TAC (Docs. 317, 318), nor Defendants'
    motion to dismiss the Consolidated Complaint contend that the TAC was untimely.

the promissory notes and deeds of trust, and the respective financial institutions initiated foreclosure proceedings against Defendants. (CEMG TAC at 12).

CEMG's TAC asserts causes of action for slander of title and abuse of process against Defendants. The slander of title claim is based on a letter Defendants allegedly sent to Chicago Title Company on October 12, 2000, which indicated that title to certain lots could not be transferred. (CEMG TAC at 23). The abuse of process cause of action is based on allegations that Richard Sinclair, Gregory Mauchley, Mauctrst, Lairtrust, and Capstone, among others, filed various lawsuits in order to obtain unfair advantages and to prevent foreclosures and transfers of certain lots within the Property. (CEMG FAC at 25-27). CEMG's TAC also alleges that Defendants falsely represented to tenants of certain lots that Defendants were the owners of such lots in order to collect rents and security deposits that were in fact owed to CEMG's predecessors in interest. (CEMG TAC at 19- 21).

CEMG's TAC alleges two causes of action for fraud against all Defendants. CEMG's first fraud claim is based on Defendants' alleged false representations to lenders regarding the inclusion of garage spaces in the legal description of certain lots. (CEMG TAC at 16). CEMG's second fraud claim is based on Defendants alleged loan financing scheme, whereby Defendants conspired to defraud lenders, *inter alia*, by (1) subdividing the Property and transferring title among themselves in order to avoid liability on loans and other debts relating to the lots; (2) filing legal proceedings in order to avoid loans and debts; (3) failing to comply with conditions imposed by the City of Turlock required to

**8**

effect proper subdivision of the Property; (4) failing to properly form the HOA; (5) refusing to convey ownership and rights in certain garages; (6) collecting rents and deposits for properties not owned by Defendants; and (7) misappropriating funds from the HOA.  (CEMG TAC at 28-29).

CEMG's TAC asserts a RICO claim against all Defendants. CEMG's TAC specifically alleges that Richard Sinclair, Brandon Sinclair, and Gregory Mauchley, through the enterprise of the Fox Hollow HOA, made fraudulent demands for dues to lenders and tenants. (CEMG TAC at 30).

**The Consolidated Complaint**

The Consolidated Complaint contains a detailed history of the Fox Hollow Property.  According to the Consolidated Complaint, Defendants Richard Sinclair and his spouse originally purchased the Property in 1988 after obtaining approval from the City of Turlock to construct an apartment complex. (CC at 7).  After the Sinclairs lost the property to foreclosure, Richard Sinclair contacted Defendants Flake and Mauchley and discussed a plan to reacquire the Property from the lender.  (CC at 10-11).  Pursuant to such discussions, Richard Sinclair formed a trust for Mauchley in 1995 named "Mauctrst," and Defendant Flake, as Trustee of the Julie Insurance Trust, purchased the Property from the lender on or about October 31, 1995 for 1.27 million dollars.  (CC at 11).

In 1997 Richard Sinclair, Mauchley, and Flake engaged in a title churning and loan financing scheme by creating the false appearance of a planned unit development with a homeowners association and the false appearance of arms length transactions in order to borrow more than $1.4 million against the Fox Hollow

**9**

Property.  (CC at 12).  As part of the scheme, Defendant Richard Sinclair assisted Defendant Mauchley in obtaining loans on Lots 1, 11, 18 and 19, each in the amount of $119,000, and an additional loan in the amount of $1 million against the balance of the Fox Hollow Property, from GMAC Mortgage Corporation ("GMAC"), secured by first deeds of trust in favor of GMAC.  (CC at 13).  Also, as part of the scheme, the $1.9 million price for Fox Hollow was paid to Defendant Flake from the proceeds on the loans from GMAC and by a Deed of Trust in favor of Defendant Flake, as trustee of the Capstone Trust, against the Fox Hollow Property. (CC at 13). Defendant Mauchley falsely represented and promised in the "Planned Unit Development Rider" included in the deeds of trust in favor of GMAC that were recorded against Lots 1, 11, 18 and 19, that there was an existing home owners association responsible for managing common areas at the property.  (CC at 13).  Defendants Richard Sinclair, Mauchley and Flake also concealed from GMAC that the corresponding one car garage for Lot 18 was on Lot 18A, that the corresponding one car garage for Lot 18 was not included in the legal description under the deed of trust for the loan on lot 18, that the corresponding one car garage for Lot 18 was left as additional collateral for Defendant Flake to receive the balance of the sales price from the creation of the other fifteen(15) lots, and that the corresponding one car garage for Lot 18 was left out as part of the deal between Defendants Richard Sinclair, Mauchley and Flake.  (CC at 14).

Defendants Richard Sinclair, Mauchley, and Flake continued the fraudulent record title churning and financing scheme at the Property in 1998.  (CC at 14).  As part of the scheme, Defendant

**10**

Richard Sinclair, in the name of Defendant Mauchley, filed applications for loans against each of the fifteen remaining lots at the Property; each of these loans was based on each of the lots being individually saleable. (CC at 15). Defendants Richard Sinclair, Mauchley, and Flake concealed from each of the lenders that the corresponding one car garages for certain lots were not included in the legal description in the deed of trust for the loan on each such lot, and that the corresponding one car garages were left as additional collateral for Defendant Flake and were left out as part of the deal between Defendants Richard Sinclair, Mauchley, and Flake in 1997. (CC at 18).

By July 1999, several of the loans Defendants obtained through the loan financing scheme had gone into default. (CC at 19). Defendants Richard Sinclair, Mauchly, and Mauctrst attempted to renegotiate or purchase the loans at substantially discounted rates by revealing to the lenders that the lots were not individually saleable due to the fact that the Property had not been properly subdivided. (CC at 19-20). In October 2000, Richard Sinclair, purportedly on behalf of the Fox Hollow HOA, sent a letter to Chicago Title Company, among others, indicating that certain lots could not be transferred because certain prerequisites to subdivision of the property had not been effected. (CC at 21-22).

In June of 2000, lenders began completing foreclosures. (CC at 22). In response, Richard Sinclair prepared and filed in the name of Mauctrst and Mauchley meritless lawsuits in an attempt to delay the foreclosures. (CC at 24). Beginning in August of 2000, Defendants Richard Sinclair, Mauchly, and Brandon Sinclair, purporting to act on behalf of the Fox Hollow HOA, began demanding

**11**

HOA dues from various lenders that had foreclosed on lots within the Property.  (CC at 23). By December 2002, Richard Sinclair, Mauchley, and Brandon Sinclair had begun pursuing their own foreclosures in the name of the Fox Hollow HOA on various lots for failure to pay assessments.  (CC at 23).

On or about May 2001, Defendants Mauchley and Flake, as trustee of the Capstone Trust, entered into a settlement agreement with GMAC of a lawsuit commenced by Mauchley and Mauctrst.  (CC at 26).  Pursuant to the settlement, Mauchley agreed to drop the lawsuit, and Defendant Flake, as a purported junior lien holder on Lots 1, 11, 18 and 19, agreed to purchase said lots, with possession of said lots "delivered to Capstone at close of escrow." (CC at 26).  Defendants Richard Sinclair, Mauchley and Flake concealed from GMAC during the negotiations that they had agreed among themselves to use Capstone Trust as a straw buyer who would immediately upon purchase of a lot from GMAC, transfer title to such lot to Defendant Richard Sinclair in a second escrow as part of Defendant Richard Sinclair obtaining a loan against such lot in an amount substantially in excess of the amount paid to GMAC.  (CC at 26).  Defendants Richard Sinclair and Flake split among themselves the net loan proceeds in excess of closing costs and the amount paid to GMAC. (CC at 26).

From 2000 to 2002, Defendants Brandon Sinclair, Richard Sinclair, and Lairtrust collected rents on lots they did not own, entered into leases for units they did not own, and refused to return rents and security deposits to tenants.  (CC at 28).

Defendants continued to assert interests in lots contained within the Property in 2007 and 2008.  On or about June 26, 2007,

Defendant Richard Sinclair caused a quitclaim deed to be recorded purportedly transferring title to certain lots containing garage spaces from Defendant Mauchley to Defendant Lairtrust. (CC at 31). In 2008, Richard Sinclair commenced multiple unlawful detainer actions in the names of Mauctrst and Lairtrust against CEMG and its tenants, asserting ownership of garage lots and seeking to evict CEMG and its tenants from such garage lots. (CC at 32-33).

The Consolidated Complaint alleges, among other causes of action, a RICO claim and an unjust enrichment claim against Mauctrst, Richard Sinclair, Brandon Sinclair, Mauchley, Flake, Lairtrust, and Capstone based on the conduct described in the complaint. (CC at 39, 42).

**IV. <u>DISCUSSION</u>**.

Defendants contend that the RICO and unjust enrichment claims advanced in the Consolidated Complaint are time-barred because they do not relate back to Plaintiffs' respective complaints filed within the limitations period. Rule 15(c)(1)(B) of the Federal Rules of Civil Procedure provides in part:

> An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence  set out--or attempted to be set out--in the original pleading

Claims arise out of the same conduct, transaction, or occurrence if they "share a common core of operative facts" such that the plaintiff will rely on the same evidence to prove each claim. *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008) (citing *Martell v. Trilogy Ltd.*, 872 F.2d 322, 325-26 (9th Cir. 1989) and *Percy v. S.F. Gen. Hosp.,* 841 F.2d 975, 978 (9th Cir. 1988)).

**13**

Where an amendment seeks to assert a new legal theory of recovery based on the same facts alleged in the original pleading, the relation back doctrine applies. *See id.* As the Second Circuit Court of Appeals explained:

> Where an initial complaint alleges a basic scheme of defrauding investors by misrepresenting earnings and profitability, an allegation of accounts receivable manipulation in an amended complaint will relate back because it is a natural offshoot of that scheme. And where an initial complaint alleges inadequate internal controls leading to overstatement of accounts receivable, a defendant is on notice of a claim in an amended complaint that it improperly recognized revenues and failed to establish sufficient reserves for doubtful accounts in violation of GAAP and industry standards. In contrast, even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an entirely distinct set of factual allegations will not relate back .

*Slayton v. Am. Express Co.*, 460 F.3d 215, 228 (2nd Cir. 2006).

**A. RICO Claim Against Moving Defendants**

**1. Fox Hollow's Claim**

Defendants argue that the RICO claim set forth in the Consolidated Complaint does not relate back to Fox Hollow's FAC because:

> new factual allegations [contained in the Consolidated Complaint] by their sheer number and detail are so vastly different from the original allegations of [Fox Hollow's FAC] that it cannot be said that the Consolidated Complaint's RICO cause of action is based on the same operative facts]

(Defs. Reply at 5). Defendants cite *Friedman v. 24 Hour Fitness USA, Inc.*, 580 F. Supp. 2d 985, 996-997 (C.D. Cal. 2008) for the proposition that "the combination of the significant increase and detail of factual allegations in the Consolidated complaint...and the escalation of Defendants' potential liability are proper reasons for not applying the relation back doctrine to this case."

1  (Reply at 5).  *Friedman* is distinguishable.

2      First, in *Friedman*, the plaintiffs had not alleged a RICO

3  claim in the pleading they sought to relate their amended complaint

4  back to.   The absence of a RICO claim in the pleading the

5  plaintiffs sought to relate their claim back to was critical to the

6  holding in *Friedman*:

7          the fact that RICO and EFTA claims are different in
           character from the common law fraud and breach of
8          contract claims that were at the core of three previous
           iterations of the complaint weighs against permitting
9          relation back. The addition of RICO and EFTA to this
           action escalates Defendant's potential liability: Treble
10         damages and civil forfeiture are available under RICO,
           and the EFTA authorizes potentially significant damages
11         for class actions. See 15 U.S.C. § 1693m(a)(2)(B).
           Plaintiffs have filed three amended complaints. They had
12         numerous opportunities to provide meaningful notice of
           their RICO and EFTA theories to Defendant. They failed to
13         do so.

14  *Id*. at 997.  Here, Fox Hollow's FAC alleged a RICO claim. (Fox

15  Hollow FAC at 9). According to Fox Hollow's FAC, the Fox Hollow HOA

16  was the "enterprise" through which Richard Sinclair and doe

17  defendants obtained "secret profits" by collecting money

18  purportedly for the paying of dues to the HOA. (Fox Hollow's FAC

19  at ¶43-44).

20      Second, the RICO claim in *Friedman* was predicated on factual

21  allegations not contained in the original complaint.  *Id*.  Here,

22  the transactions underlying the Consolidated Complaint's RICO claim

23  were alleged in Fox Hollow's FAC, albeit with less specificity than

24  that provided in the Consolidated Complaint.  *Inter alia*, Fox

25  Hollow's FAC alleged that (1) Richard Sinclair diverted monies paid

26  as dues to the HOA to himself as management fees for the HOA, (2)

27  Richard Sinclair diverted monies paid as dues to the HOA to his son

28  by purchasing insurance policies for the benefit of Mauctrst LLC

**15**

with HOA funds; (3) Mauctrst LLC and Richard Sinclair conspired to borrow funds secured by individual lots from GMAC, Bank One, Advanta Mortgage, ContiMortgage, and HFC; (4) Mauctrst LLC, Capstone Trust, Capstone LLC, and Lairtrust LLC failed to pay HOA fees; and (5) Richard Sinclair and Mauctrst filed numerous dilatory lawsuits to prevent foreclosures and to obtain windfall profits. (Id. at ¶18; ¶45-49).   The claims all related to the same nucleus of operative facts related to the Fox Hollow Property. Fox Hollow's FAC also contained the general allegation that:

> at all times material hereto, each defendant named in this complaint was the agent, employee, or servant of the other defendants, and was at all times material hereto acting within the course and scope of said agency, employment, or servitude with the permission and consent of the other defendants

(Fox Hollow's FAC at 3).[5]

### a. Fox Hollow's Allegations Against Mauctrst

Fox Hollow's FAC contains sufficient factual allegations against Mauctrst to permit the RICO claim alleged in the Consolidated Complaint to relate back to Fox Hollow's FAC. According to Fox Hollow's FAC, Mauctrst conspired to obtain loans from various banks under false pretenses, conspired to divert Fox Hollow HOA fees, and conspired to file dilatory lawsuits in order to delay foreclosures.   Although the Consolidated Complaint pleads additional details regarding Mauctrst's role in the RICO enterprise, the additional details refer to the same transactions and the same overall scheme alleged in Fox Hollow's FAC.   Because the RICO allegations against Mauctrst set forth in the Consolidated

---

[5] Although this broad, conclusory allegation of agency is insufficient under contemporary pleading standards, Fox Hollow's FAC pre-dated recent refinements to the Supreme Court's pleading jurisprudence.

Complaint are "natural offshoots" of the allegations made against Mauctrst in Fox Hollow's FAC, and because Fox Hollow's FAC alleged an agency relationship between Richard Sinclair and Mauctrst, Fox Hollow's FAC put Mauctrst on notice of its potential liability under RICO. *See Slayton*, 460 F.3d at 228 (applying relation back doctrine where amended complaint's allegations "amplified, or stated in a slightly different way," claim alleged in original complaint). The motion to dismiss Fox Hollow's RICO claim against Mauctrst is DENIED.

### b. Capstone and Lairtrust

The only specific factual allegations against Capstone and Lairtrust included in Fox Hollow's FAC concerned the entities' failure to pay HOA dues. However, Fox Hollow's FAC alleged a broad loan financing scheme between Mauctrst and Richard Sinclair, and the Consolidated Complaint alleges that Capstone and Lairtrust were entities Richard Sinclair and others used to effect the loan scheme. Fox Hollow's FAC also alleged that Richard Sinclair and others filed dilatory lawsuits in furtherance of the RICO enterprise, and the Consolidated Complaint alleges that Richard Sinclair filed such lawsuits through Lairtrust and Capstone. Conduct alleged in Fox Hollow's FAC is the basis for the Consolidated Complaint's RICO claim against Lairtrust and Capstone. The Consolidated Complaint relates back to Fox Hollow's FAC.

### 2. CEMG's RICO Claims

On June 22, 2007, CEMG filed a third amended complaint (TAC). (Doc. 300).[6]   CEMG's TAC alleged that, at all times relevant,

---

[6] Neither Defendants' motion to dismiss the TAC (Docs. 317, 318) nor the motion to dismiss the Consolidated Complaint allege that the TAC was untimely.

**17**

1  Capstone LLC was the alter ego of Brandon Sinclair, Lairtrust was

2  the alter ego of Richard and Deborah Sinclair, and Mauctrst LLC was

3  the alter ego of  Gregory Mauchley and Diana Mauchley.  (TAC at 4-

4  5).  *Inter alia*, CEMG's TAC alleged that the Defendants entered

5  into a conspiracy to improperly subdivide the Fox Hollow property,

6  obtain loans on the lots while transferring title to the lots as

7  part of a scheme to avoid liability on the loans and other debts

8  related to the lots, file legal proceedings to avoid loans and

9  debts, and misappropriate funds from the HOA, (CEMG TAC at 29-30);

10  these same allegations form the basis of the Moving Defendant's

11  RICO liability as stated in the Consolidated Complaint.

12      The RICO claim alleged in the Consolidated Complaint is based

13  on the same operative facts set forth in the TAC.  Although the

14  Consolidated Complaint adds new details, the allegations against

15  Moving Defendants arise out of the same conduct and transactions

16  set forth in the TAC. Moving Defendants' argument that CEMG waived

17  its RICO claim against them by specifically identifying only

18  Richard Sinclair, Brandon Sinclair, and Gregory Mauchley in the

19  TAC's RICO cause of action is not supported by any legal authority

20  provided by Defendants. Advancement of a new legal theory based on

21  facts pled in an earlier complaint is permissible under Rule 15.

22  *See Martell v. Trilogy Ltd.*, 872 F.2d 322, 325-26 (9th Cir. 1989)

23  (finding that amended complaint related back where amended

24  complaint added new theory of recovery based on facts alleged in

25  original complaint).   The Consolidated Complaint's RICO claim

26  relates back to CEMG's TAC.

27  ///

28  ///

**18**

**B. Fox Hollow's Unjust Enrichment Claim**

Defendants contend that because Fox Hollow's FAC did not assert an unjust enrichment cause of action against them, Fox Hollow's claim is time-barred. Defendants contention lacks merit. Fox Hollow's unjust enrichment claim is a legal theory that clearly arises out of the same conduct alleged in Fox Hollow's FAC: Defendants' failure to pay dues owed to the HOA and misappropriation of HOA dues. Defendants motion to dismiss the Consolidated Complaint's unjust enrichment cause of action is DENIED.

**ORDER**

For the reasons stated, IT IS ORDERED:

1) Defendants' motion to dismiss is DENIED in its entirety;

2) Plaintiffs shall lodge a formal order consistent with this decision within five (5) days following electronic service of this decision by the clerk.

IT IS SO ORDERED.

**Dated:    December 20, 2010           /s/ Oliver W. Wanger**
                                    UNITED STATES DISTRICT JUDGE

**19**
