UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FOX HOLLOW OF TURLOCK OWNER'S ASSOCIATION, et. al.,**<br><br>    **Plaintiffs,**<br><br>    v.<br><br>**RICHARD SINCLAIR, et al.,**<br><br>    **Defendants.** | CASE NO. 1:03-CV-5439 AWI SAB<br><br>ORDER RE: MOTION TO STRIKE AND FOR SANCTIONS |

## I. History

This dispute arises out of a housing development known as Fox Hollow of Turlock ("Property"). Plaintiff Fox Hollow of Turlock Homeowners' Association ("Fox Hollow HOA") is the homeowner's association. Plaintiff California Equity Management Group, Inc. ("CEMG") is the record owner of lots contained within the Property. Fox Hollow HOA, CEMG, and Andrew Katakis (collectively "Plaintiffs") are represented by the same counsel, and form one side of the litigation. Defendants Lairtrust, LLC ("Lairtrust"), Capstone, LLC ("Capstone"), Mauctrst, LLC ("Mauctrst") (collectively "LLC Defendants") are limited liability companies that were allegedly used to convert homeowners' association funds, effect property transfers, and commit other acts. Defendants Richard Sinclair, Brandon Sinclair, and Gregory Mauchley (collectively "Individual Defendants") were principals, directors, or employees of the LLC Defendants.

In 1988, Richard Sinclair and his wife purchased the Property and obtained approval from

the City of Turlock to construct a 35 unit town house complex.  They obtained a loan secured by a deed of trust on the Property.  They built an apartment complex on the Property.  In 1992, Richard Sinclair and his wife defaulted on the loan.  They obtained approval to subdivide the Property into 19 lots.  On June 8, 1994, Richard Sinclair filed for bankruptcy.  In 1995, Stanley Flake as Trustee of the Julie Insurance Trust purchased the Property.  In 1997 or 1998, Gregory Mauchley and Mauctrst acquired the Property.  Gregory Mauchley and Mauctrst obtained loans secured by the individual lots on the Property from various third parties.  They fell into default on those loans.  Fox Hollow HOA was established in December 2000.  Plaintiffs allege the Individual and LLC Defendants collected homeowners' association dues on lots already sold to help pay the cost of foreclosure litigation.  Through various legal processes and foreclosure, CEMG became the owner of 8 lots on the Property.  Defendants challenge CEMG's ownership based on allegations of wrongful foreclosure and interference with contract.

This case is a consolidation of three related cases: an action commenced by Fox Hollow HOA  against the Individual Defendants, LLC Defendants, and Stanley Flake as Trustee of Capstone Trust, Case No. CV-F-03-5439 ("Fox Hollow Action"); an action commenced by CEMG against the Individual Defendants, LLC Defendants, Diana Mauchley, Deborah Sinclair, Sinclair Enterprises, Inc., Stanley Flake, and Stanley Flake as Trustee of the F. Hanse Trust and of the Julie Insurance Trust Case No. CVF- 03-5774 ("CEMG Action"); and an action commenced by the LLC Defendants against Plaintiffs in the Stanislaus County Superior Court, Case No. 322675 ("Lairtrust Action"), removed to this Court and consolidated with the Fox Hollow and CEMG Actions by Order filed on October 6, 2003 ("Consolidated Federal Action"). The Consolidated Federal Action is also related to another state court case (Stanislaus County Superior Court, Case No. 332233, originally filed on April 24, 2003) in which the Individual Defendants and LLC Defendants filed suit against Plaintiffs ("State Court Action").  Plaintiffs also filed a cross-complaint against Richard Sinclair, Gregory Mauchley, and Mauctrst.  The State Court Action dealt with the substance of the dispute between the parties (the foreclosure process, ownership of the individual lots on the Property).  The parties filed a notice of settlement on July 16, 2007 ("2007 Settlement") both in federal and state court. Doc. 303.

Though the 2007 Settlement was meant to resolve all issues, it was not finalized.  The state trial court found it unenforceable and proceeded with the case.  The status of the 2007 Settlement is a contested issue in the State Court Action.  A 36 day bench trial was held, starting on December 9, 2008.  On August 18, 2009, judgment was entered against the Individual Defendants and LLC Defendants on the main complaint and judgment was entered against Plaintiffs on the cross-complaint. Doc. 433, Part 8.  The State Court Action is on appeal.

      The operative complaint in this Consolidated Federal Action was filed on July 21, 2010.  Doc. 410.  The Individual Defendants filed a document termed a cross-complaint ("Cross-Complaint) against Plaintiffs. Doc. 425.  Lairtrust filed a counterclaim ("Counterclaim") against Plaintiffs. Doc. 471.  Plaintiffs generally allege that the Cross-Complaint and Counterclaim are duplicative of the State Court Action.  Richard Sinclair is a practicing attorney and has sought to represent both himself and other defendants in this case.  The Consolidated Federal Action has proceeded in parallel to the State Court Action, but as stated above, the heart of dispute is contained in the State Court Action.  The Consolidated Federal Action appears to be limited to ancillary disputes such as homeowners' association funds and the tactics each party used in prosecuting their cases.  Specifically, the enforceability of the 2007 Settlement was determined to be part of the State Court Action; all claims based on the 2007 Settlement were stayed. Doc. 576.  Judge Wanger retired at the end of September 2011.  The case was reassigned to the undersigned.  Doc. 804.

      Plaintiffs made motions to strike the First Amended Cross-Complaint, Counterclaim, and First Amended Counterclaim for failing to comply with Judge Wanger's prior orders setting out the propriety and bounds of those claims. Docs. 742 and 799.  These motions were granted.  All claims in the Cross-Complaint were found to be stayed while Lairtrust was granted leave to amend the Counterclaim to clearly delineate the non-stayed claims. Doc. 860 ("September 28, 2012 Order").  Richard Sinclair filed what he termed a "First Amended Counterclaim" (properly the Second Amended Counterclaim) on behalf of himself, Lairtrust, Capstone, and Las Palmas of Turlock, LLC ("Las Palmas"). Doc. 863.  Plaintiffs have made a motion to strike the Second Amended Counterclaim. Doc. 866.  Plaintiffs also seek sanctions against Richard Sinclair.  The

motion (to strike and for sanctions) is opposed. Doc. 872.

## II. Discussion

**A. Motion to Strike**

After the Counterclaim was initially filed, Judge Wanger ordered that large parts of that pleading be stayed.  He initially ordered that the only non-stayed claims were "(i) [Plaintiffs'] alleged breach of the 2007 settlement agreement, and (ii) [Plaintiffs'] alleged conduct during and after trial of the state court action." Doc. 476, 2:9-11.  Upon further motion, Judge Wanger amended the bounds of the stay, finding that "As resolution of the parties' appeal before the state court will bear on Plaintiffs' claims arising out of the purported 2007 settlement agreement, Plaintiffs' motions to stay are GRANTED....Plaintiffs' motion to sever and stay Lairtrust's counter claim is GRANTED." Doc. 563, 6:1-9.  Consequently, Judge Wanger granted Plaintiffs' motion for more definite statement with regard to the Counterclaim, finding "It is unclear from the fact of the counterclaim which of the twelve causes of action are based on conduct that is outside the scope of the issues that have already been stayed....Because the complaint is unclear as to what alleged actions and omissions by Plaintiffs are the basis for each cause of action, and because the majority of Lairtrust's counterclaim has been stayed, a more definite statement is required to permit Plaintiffs to frame a response." Doc. 644, 4:15-26.

Richard Sinclair filed the First Amended Counterclaim. Doc. 773.  Upon motion by Plaintiffs, the court found the First Amended Counterclaim to be subject to the same failings as the Counterclaim.  Of note, the September 28, 2012 Order specifically stated that "claims related to the 2007 Settlement were not excluded from the stay....Lairtrust continues to make claims based on alleged violation of the 2007 Settlement. None of the language contained in the individual causes of action make a distinction as to what is stayed and what is not....As the court can not extricate the stayed and non-stayed claims, both the Counterclaim and First Amended Counterclaim are stricken in their entirety. Lairtrust (and Lairtrust alone) is granted leave to amend the Counterclaim within 30 days of the filing of this order. Lairtrust must explicitly distinguish between those claims which are stayed and those which are not." Doc. 860, 4:20-21,

5:7-9, and 6:6-10.  The pleadings were stricken for failure to comply with Judge Wanger's order on the motion for a more definite statement.  See Jones v. Metro. Life Ins. Co., 2010 U.S. Dist. LEXIS 113219, *18 (N.D. Cal. 2010) ("based on its inherent powers, a court may strike material from the docket, including portions of a document, reflecting procedural impropriety or lack of compliance with court rules or orders"); Timbisha Shoshone Tribe v. Kennedy, 2010 U.S. Dist. LEXIS 21048, *6 (E.D. Cal. 2010) ("this Court may strike an untimely document using its inherent powers to manage and control its docket and as a sanction for violating this Court's order").  Lairtrust was granted leave to amend to fix the problem.

The Second Amended Complaint ignores the prior court rulings, including the September 28, 2012 Order.  First, it names Lairtrust, Capstone, Las Palmas, and Richard Sinclair as plaintiffs.  The prior order made clear that "Lairturst (and Lairtrust alone) is granted leave to amend." Doc. 860, 6:8-9.  Richard Sinclair argues that "[he], as member manager of Lairtrust, LLC was injured by Plaintiff in his ownership of Capstone, LLC and in his ownership of Las Palmas of Turlock, LLC. That makes their Counterclaim compulsory. Counterclaimant seeks the approval of the Court as the Counterclaim is written." Doc. 872, 2:23-3:1.  Though Richard Sinclair claims to be seeking court approval for amending the Counterclaim, he did not in fact do so.  Richard Sinclair did not file a motion for leave to amend.  He filed the Second Amended Counterclaim directly and asked for no permission.  If this were the only violation of the court's prior orders, it may be excusable, but Richard Sinclair did more.

The second willful violation is his continuing claims for relief based upon the 2007 Settlement.  In the Second Amended Counterclaim, Richard Sinclair bases several causes of action on the 2007 Settlement, including but not limited to the following: "[Declaratory relief] A determination that Defendant has interfered with Plaintiffs' ownership of said property including the Lots provided to Plaintiffs in the Settlement Agreement....[Breach of Contract] Defendants also breached the Global Settlement Agreement of July 2007 between all parties. Defendant specifically sought out to void the contract he expressly agreed to by claiming that FHOTOA and CEMG did not sign/agree as parties to the matter, when Katakis himself was under full control of both of those institutions and the Board approved the Settlement Agreement. Defendant then in

5

fact failed to perform according to the terms of the Global Settlement Agreement. Defendants claims were wrongful and in breach of the Global Settlement Agreement." Doc. 863, 12:10-12 and 17:9-17.  As explained above, claims related to the 2007 Settlement were stayed.  Lairtrust was to file a Second Amended Counterclaim that clearly segregated the stayed claims from the non-stayed claims.  Instead, the claims based on the 2007 Settlement are intermingled throughout.  The problems identified in the First Amended Counterclaim (inability to separate out stayed and non-stayed matters) continues in the Second Amended Counterclaim.

Lairtrust is granted leave to amend; it is being given another chance to fix its pleading. However, Lairtrust is specifically warned that continued failure to comply with court orders may result in dismissal of the Counterclaim with prejudice as a sanction.  The five factors to be analyzed when considering dismissal are "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits and (5) the availability of less drastic sanctions." Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986).

**B. Sanctions**

Plaintiffs ask for sanctions against Richard Sinclair for his failure to obey court orders.  In the September 28, 2012 Order, Richard Sinclair was specifically warned "Sanctions are sought for alleged violations of past court rulings (written and oral) issued by Judges Wanger and Beck. This court is still not familiar with all the intricacies of this case and is hesitant to grant sanctions without first becoming more conversant with the facts of this case. The court notes that Judge Wanger has granted monetary sanctions against Richard Sinclair in the past. See Docs. 613 and 725. Further, Judge Beck has also granted sanctions and has issued an order to show cause why further sanctions should not be imposed against Richard Sinclair; the hearing was vacated pending resolution of certain motions for reconsideration. See Docs. 643 and 726. A pattern is clearly forming. Richard Sinclair and other Defendants are warned that all court orders must be obeyed or serious sanctions (both monetary and litigation) are likely in the future." Doc. 860, 9:24-10:5.  Given the procedural complexity of the case. the court was loathe to grant sanctions

1  based upon the undersigned's lack of familiarity with the full implications of prior judges'
2  rulings.  Now, Richard Sinclair has violated the September 28, 2012 Order, a ruling the
3  undersigned understands very well.  By filing the Second Amended Counterclaim on behalf of
4  multiple parties not granted leave to amend and intermixing claims based on the 2007
5  Settlement, Richard Sinclair has willfully violated the September 28, 2012 Order.
6     In trying to explain his position, Richard Sinclair states "The Court made clear that the
7  alleged claims that would be allowed were the claims resulting from the termination of the
8  Settlement Agreement by Plaintiff in 2007 and the matters during and after the State Court
9  Trial." Doc. 872, 11:5-7.  Richard Sinclair claims the basis for his belief to be that "The Court
10 issued an Order limiting Defendant's counterclaim: 'Cross-Complaint was stayed as to all
11 matters other than the alleged 2007 settlement agreement and the alleged conduct relating to Lot
12 1 during and after the trial in the State Court case by order of this Court entered on February 2,
13 2011' (P 3 of Document 742-1 issued by the Defense). Plaintiff removed all reference against
14 Defendants other than what was above granted....Contrary to the Plaintiffs claim, all of the items
15 that are stayed were removed." Doc. 862, 2:10-15 and 3:5-6.  The reference to Plaintiffs' earlier
16 filing is extremely misleading.  First, the quote discusses the Cross-Complaint while the subject
17 of this motion is the Counterclaim.  Second, Richard Sinclair selectively quotes the language as
18 the full sentence reads "Among other things, that Cross-Complaint was stayed as to all matters
19 other than the alleged 2007 settlement agreement and the alleged conduct relating to Lot 1 during
20 and after the trial in the State Court case by order of this Court entered on February 2, 2011
21 [Docket #s 473 & 476], ***that Cross-Complaint as to the alleged 2007 settlement agreement was***
22 ***stayed by order of this Court entered on May 13, 2011*** [Docket #s 563 & 576], and partial
23 summary judgment was granted against Mr. Sinclair and the others due to a lack of standing as to
24 the Lot 1 claims by memorandum decision entered on June 13, 2011 [Docket # 626]." Doc. 742,
25 Part 1, 3:2-9, emphasis added.  Richard Sinclair tries to use this tortured quotation to claim that
26 he understood the claims based on the 2007 Settlement to be non-stayed.  This explanation is
27 ridiculous.  Richard Sinclair's assertion goes against the plain language of the court's recent
28 order; there is no good-faith basis for his reading of the prior rulings in this case.

"[A] court may assess attorney's fees as a sanction for the willful disobedience of a court order." Chambers v. NASCO, Inc., 501 U.S. 32, 45 (1991), citations omitted. Richard Sinclair is an attorney. Title 28 U.S.C. §1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Sanctions awarded pursuant to Section 1927 may be based upon "a finding of subjective bad faith." Salstrom v. Citicorp Credit Serv., Inc., 74 F.3d 183, 184 (9th Cir. 1996). "Knowing or reckless conduct meets this standard." MGIC Indemnity v. Moore, 952 F.2d 1120, 1122 (9th Cir. 1991). The September 28, 2012 Order set out clearly what could and could not be included as a live claim in a Second Amended Counterclaim. Richard Sinclair filed a pleading that directly violated the limitations imposed by the September 28, 2012 Order. In his opposition to Plaintiffs' motion, Richard Sinclair's explanations for the legal positions he has taken are patently disingenuous. The Second Amended Counterclaim unreasonably and needlessly multiplies the proceedings in this case. Sanctions under Section 1927 are warranted.

Absent Richard Sinclair's egregious behavior, Plaintiffs would not have had to make this motion to strike. Thus, he must compensate Plaintiffs for the attorneys fees they have expended. Plaintiffs' attorney, William Littlewood, has provided a declaration estimating the amount of time spent on the motion and reply at 18.4 hours and stating his billing rate is $250/hour. Doc. 868, 5:3-19. That totals $4,600.

### III. Order

Plaintiffs' motion to strike is GRANTED. The Second Amended Counterclaim (Doc. 863) is STRICKEN. Lairtrust (and Lairtrust alone) may file an amended pleading within thirty (30) days. Should additional parties wish to join as plaintiffs to the counterclaim, they must seek leave to amend in a separate motion after a proper Third Amended Counterclaim has been filed.

Plaintiffs' request for sanctions against Richard Sinclair is GRANTED. Richard Sinclair is ordered to pay Plaintiffs $4,600 within thirty (30) days to compensate Plaintiffs for attorneys

1 | fees expended on this motion.

3 | IT IS SO ORDERED.

Dated:    April 5, 2013

SENIOR  DISTRICT  JUDGE