1

2

3                        **UNITED STATES DISTRICT COURT**

4                        **EASTERN DISTRICT OF CALIFORNIA**

5

6    **FOX HOLLOW OF TURLOCK**              **CASE NO. 1:03-CV-5439 AWI SAB**
     **OWNER'S ASSOCIATION, a California**
7    **Nonprofit Mutual Benefit Corporation, et**   **ORDER**
     **al.,**
8
              **Plaintiffs**
9                                          **(Docs. 901, 905, 911, 921, 932, 943, 973,**
              **v.**                       **993, and 1002)**
10
     **MAUCTRST, LLC, et al.,**
11
              **Defendants**
12

13                                **I. Background**

14        This dispute arises out of a housing development known as Fox Hollow of Turlock

15   ("Property").  Plaintiff Fox Hollow of Turlock Homeowners' Association ("Fox Hollow HOA") is

16   the homeowner's association.  Plaintiff California Equity Management Group, Inc. ("CEMG") is

17   the record owner of lots contained within the Property.  Fox Hollow HOA, CEMG, and Andrew

18   Katakis (collectively "Plaintiffs") are represented by the same counsel, and form one side of the

19   litigation.  Defendants Lairtrust, LLC ("Lairtrust"), Capstone, LLC ("Capstone"), Mauctrst, LLC

20   ("Mauctrst") (collectively "LLC Defendants") are limited liability companies that were allegedly

21   used to convert homeowners' association funds, effect property transfers, and commit other acts.

22   Defendants Richard Sinclair, Brandon Sinclair, and Gregory Mauchley (collectively "Individual

23   Defendants") were principals, directors, or employees of the LLC Defendants (collectively

24   "Defendants").

25        In 1988, Richard Sinclair and his wife purchased the Property and obtained approval from

26   the City of Turlock to construct a 35 unit town house complex.  They obtained a loan secured by a

27   deed of trust on the Property.  They built an apartment complex on the Property.  In 1992, Richard

28   Sinclair and his wife defaulted on the loan.  They obtained approval to subdivide the Property into

19 lots.  On June 8, 1994, Richard Sinclair filed for bankruptcy.  In 1995, Stanley Flake as Trustee

of the Julie Insurance Trust purchased the Property.  In 1997 or 1998, Gregory Mauchley and

Mauctrst acquired the Property.  Gregory Mauchley and Mauctrst obtained loans secured by the

individual lots on the Property from various third parties.  They fell into default on those loans.

Fox Hollow HOA was established in December 2000.  Plaintiffs allege the Individual and LLC

Defendants collected homeowners' association dues on lots already sold to help pay the cost of

foreclosure litigation.  Through various legal processes and foreclosure, CEMG became the owner

of 8 lots on the Property.  Defendants challenge CEMG's ownership based on allegations of

wrongful foreclosure and interference with contract.

       This case is a consolidation of three related cases: an action commenced by Fox Hollow

HOA against the Individual Defendants, LLC Defendants, and Stanley Flake as Trustee of

Capstone Trust, Case No. CV-F-03-5439 ("Fox Hollow Action"); an action commenced by

CEMG against the Individual Defendants, LLC Defendants, Diana Mauchley, Deborah Sinclair,

Sinclair Enterprises, Inc., Stanley Flake, and Stanley Flake as Trustee of the F. Hanse Trust and of

the Julie Insurance Trust Case No. CVF- 03-5774 ("CEMG Action"); and an action commenced

by the LLC Defendants against Plaintiffs in the Stanislaus County Superior Court, Case No.

322675 ("Lairtrust Action").  These actions were removed to this court and consolidated with the

Fox Hollow Action and CEMG Action on October 6, 2003.  The main operative complaint

("Consolidated Federal Action") traces back to the CEMG Action and Fox Hollow Action.  Doc.

410.  Running concurrently is the operative complaint in the Lairtrust Action. Doc. 80.  The

Individual Defendants filed a document termed a cross-complaint ("Cross-Complaint) against

Plaintiffs. Doc. 425.  Lairtrust filed a counterclaim ("Counterclaim") against Plaintiffs. Doc. 471.

       This federal case is also related to another state court case (Stanislaus County Superior

Court, Case No. 332233, originally filed on April 24, 2003) in which the Individual Defendants

and LLC Defendants filed suit against Plaintiffs ("State Court Action").[1]  Plaintiffs also filed a

---

[1] The Plaintiffs in this case are defendants in the State Court Action while Defendants are plaintiffs in that case.
When quoting from documents of the State Court Action, the court has changed the references to conform with the
status of the parties in this federal case in an attempt to avoid confusion.  Plaintiffs are always Andrew Katakis,
CEMG, and Fox Hollow HOA or some subset thereof.  Defendants are always Richard Sinclair, Brandon Sinclair,
Gregory Mauchley, Lairtrust, Capstone, and Mauctrst.

cross-complaint against Richard Sinclair, Gregory Mauchley, and Mauctrst for abuse of process. The State Court Action dealt with the substance of the dispute between the parties (the foreclosure process, ownership of the individual lots on the Property).  The parties filed a notice of settlement on July 16, 2007 ("2007 Settlement"). Doc. 303.  Though the 2007 Settlement was meant to resolve all issues, that turned out not to be the case.  In the State Court Action, it was determined that the 2007 Settlement was unenforceable.  A 36 day bench trial was held, starting on December 9, 2008.  On August 18, 2009, the Superior Court issued its judgment ("Trial Decision"), finding in favor of the defending parties on all claims; that court found in favor of Plaintiffs on the main complaint and Defendants on the cross-complaint. Doc. 433, Part 8.  The parties appealed.  On January 23, 2013, the Fifth District Court of Appeal issued an opinion ("Appellate Decision") affirming the Trial Decision, largely on grounds of unclean hands. Doc. 923-22; <u>Sinclair v. Katakis</u>, 2013 Cal. App. Unpub. LEXIS 509 (Cal. App. 5th Dist. Jan. 23, 2013).  On April 10, 2013, the California Supreme Court denied the petition for review. <u>Sinclair v. Katakis</u>, 2013 Cal. LEXIS 3119 (Cal. Apr. 10, 2013).

After the end of the State Court Action, the parties entered into negotiations.  Plaintiffs were able to settle with Gregory Mauchley and Mauctrst; their affirmative claims in the Lairtrust Action are dismissed and an entry of default against them has been entered on the Consolidated Federal Action. See Doc. 1013.  Unfortunately, Plaintiffs, Richard Sinclair, Brandon Sinclair, Lairtrust, and Capstone were unable to resolve their disputes.

This case was originally assigned to District Court Judge Oliver Wanger and Magistrate Judge Dennis Beck.  This federal case has proceeded in parallel to the State Court Action.  However, the heart of dispute is contained in the State Court Action.  Judge Wanger determined that several of the issues in Counterclaim and Cross-Complaint had to be stayed pending resolution of the State Court Action as the cases deal with the same subject matter.  Judge Wanger retired at the end of September 2011.  The case was reassigned to the undersigned. Doc. 804. Multiple judges have sanctioned Defendants (Richard Sinclair in particular) for failure to follow rules and court orders.

Plaintiffs have now made several additional motions for sanctions. Docs. 901, 905, 973,

993, and 1002.  Plaintiffs also seek to take the final judgment in the State Court Action and apply

them to the Lairtrust Action, Counterclaim, and Cross-Complaint as res judicata. Doc. 921.

Defendants seek to take the final judgment in the State Court Action and apply them to the

Consolidated Federal Action as res judicata. Doc. 943.  Defendants seek leave to amend the

Counterclaim. Doc. 911.  Defendants also seek to reopen discovery. Doc. 932.  All motions are

opposed.


## II. Failure to Pay Sanctions (Doc. 973)

Plaintiffs seek additional monetary sanctions for Richard Sinclair's failure to pay past

sanctions. Doc. 973.  This court ordered Richard Sinclair to pay Plaintiffs $4,600 in attorneys fees

as a sanction for failing to comply with earlier court orders. Doc. 891, April 5, 2013 Order, 8:16-

20.  Richard Sinclair has not paid and states "Richard Sinclair is in the process of retiring. He has

turned 65 and is unable to continue to practice law. He has applied for Social Security. The

combination of 4 major skeletal surgeries over the recent three years has also disabled his ability

to actively practice law. Mr. Sinclair filed with all Courts the Notices of Disability that were

issued for more than 3 years. Mr. Katakis' attorneys have chosen to ignore them and continue to

flood this office with motions and file for sanctions. I answered what I could and have paid what I

could. I am disabled and out of money." Doc. 982, Richard Sinclair Opposition, 1:11-17.

"The ability of a party to pay is one factor a court should consider when imposing

sanctions. Circuits that have addressed this issue have held the sanctioned party has the burden to

produce evidence of inability to pay. Simple logic compels this result: the sanctioned party knows

best his or her financial situation." Gaskell v. Weir, 10 F.3d 626, 629 (9th Cir. 1993), citations

omitted.  The relevant explanation provided is that "Mr. Sinclair has had extensive disability

which Mr. Katakis and his counsel are aware of and also has suffered a legal separation over the

last several years and has turned 65. Prior to that, he had already distributed his assets due to the

Estate Tax Laws and kept his Receivables." Doc. 982, Richard Sinclair Opposition, 2:11-15.  No

further detail is provided to show the inability to pay the $4,600 sanction.  In Gaskell, the Ninth

Circuit said, "Canatella filed a declaration in which he stated, 'My law practice checking usually

4

has only enough funds to pay current obligations. The equitable interest in all real or personal property in my name is held by the family trust.' This statement is the closest Canatella came to producing any evidence of his asserted inability to pay. This is not sufficient." Gaskell v. Weir, 10 F.3d 626, 629 (9th Cir. 1993); see NLRB v. Trans Ocean Export Packing, Inc., 473 F.2d 612, 616 (9th Cir. 1973) (as defense for civil contempt, "To satisfy this burden the respondent must show 'categorically and in detail' why he is unable to comply"). Richard Sinclair's statement is roughly equivalent to that in Gaskell; the bare declaration with minimal detail is not enough to justify elimination or reduction of the sanctions award.

Richard Sinclair states, "Mr. Katakis is able to perfect those sanctions and record them and protect whatever interest that does for him....Sinclair is suing on his receivables and is happy to pay once he collects." Doc. 982, Richard Sinclair Opposition, 1:8 and 2:15-16. These appear to be the means by which Plaintiffs can recover the money from Richard Sinclair. The court will not add to the amount already assessed for sanctions; Plaintiffs' motion for additional monetary sanctions is denied.

However, Richard Sinclair further openly admits that "additional sanctions will not enforce compliance." Doc. 982, Richard Sinclair Opposition, 2:20. This appears to be true for the other Defendants as well given how Richard Sinclair appears to have spoken on their behalf throughout this litigation. This situation is untenable. Thus, the court is forced to switch from monetary to litigation sanctions from this point forward.


**III. Lairtrust's Counterclaim (Docs. 901, 911, 993, and 1002)**

Plaintiffs have made a motion to strike or dismiss Lairtrust's Third Amended Counterclaim (Doc. 895) for failure to comply with earlier court orders limiting the scope of the counterclaim. Doc. 901. Lairtrust then filed a belated motion to amend the Third Amended Counterclaim. Doc. 911. In striking the Second Amended Counterclaim, the court specifically noted that

> The Second Amended Complaint ignores the prior court rulings, including the September 28, 2012 Order. First, it names Lairtrust, Capstone, Las Palmas, and Richard Sinclair as plaintiffs. The prior order made clear that 'Lairturst (and Lairtrust alone) is granted leave to amend.' Doc. 860, 6:8-9. Richard Sinclair argues that '[he], as member manager of Lairtrust, LLC was injured by Plaintiff in

his ownership of Capstone, LLC and in his ownership of Las Palmas of Turlock, LLC. That makes their Counterclaim compulsory. Counterclaimant seeks the approval of the Court as the Counterclaim is written.' Doc. 872, 2:23-3:1. Though Richard Sinclair claims to be seeking court approval for amending the counterclaim, he did not in fact do so. Richard Sinclair did not file a motion for leave to amend. He filed the Second Amended Counterclaim directly and asked for no permission. If this were the only violation of the court's prior orders, it may be excusable, but Richard Sinclair did more.

The second willful violation is his continuing claims for relief based upon the 2007 Settlement. In the Second Amended Counterclaim, Richard Sinclair bases several causes of action on the 2007 Settlement, including but not limited to the following: '[Declaratory relief] A determination that Defendant has interfered with Plaintiffs' ownership of said property including the Lots provided to Plaintiffs in the Settlement Agreement....[Breach of Contract] Defendants also breached the Global Settlement Agreement of July 2007 between all parties. Defendant specifically sought out to void the contract he expressly agreed to by claiming that FHOTOA and CEMG did not sign/agree as parties to the matter, when Katakis himself was under full control of both of those institutions and the Board approved the Settlement Agreement. Defendant then in fact failed to perform according to the terms of the Global Settlement Agreement. Defendants claims were wrongful and in breach of the Global Settlement Agreement.' Doc. 863, 12:10-12 and 17:9-17. As explained above, claims related to the 2007 Settlement were stayed. Lairtrust was to file a Second Amended Counterclaim that clearly segregated the stayed claims from the non-stayed claims. Instead, the claims based on the 2007 Settlement are intermingled throughout. The problems identified in the First Amended Counterclaim (inability to separate out stayed and non-stayed matters) continues in the Second Amended Counterclaim.

Lairtrust is granted leave to amend; it is being given another chance to fix its pleading. However, Lairtrust is specifically warned that continued failure to comply with court orders may result in dismissal of the Counterclaim with prejudice as a sanction.

....

Lairtrust (and Lairtrust alone) may file an amended pleading within thirty (30) days. Should additional parties wish to join as plaintiffs to the counterclaim, they must seek leave to amend in a separate motion after a proper Third Amended Counterclaim has been filed.

Doc. 891, April 5, 2013 Order, 5:9-6:10 and 8:24-26.

The court specifically ordered that Lairtrust (and Lairtrust alone) file an amended pleading and that Lairtrust segregate the stayed and non-stayed claims. The Third Amended Counterclaim has not corrected these problems. The caption of Third Amended Counterclaim lists Lairtrust and Richard Sinclair as plaintiffs and states "PLAINTIFFS, LAIRTRUST, LLC, and RICHARD C. SINCLAIR, Member Manager, herein file their Third Amended Counterclaim." Doc. 895, Third Amended Counterclaim, 1 and 2:8-9.

As for intermingling of stayed and non-stayed claims Judge Wanger initially found that "It

6

1    is unclear from the face of the counterclaim which of the twelve causes of action are based on

2    conduct that is outside the scope of the issues that have already been stayed. For example, *inter*

3    *alia*, Lairtrust's fraud cause of action does not reference specific conduct but rather makes general

4    allegations that may or may not concern conduct and issues that are subject to the order staying

5    portions of Lairtrust's counterclaim. Because the complaint is unclear as to what alleged actions

6    and omissions by Plaintiffs are the basis for each cause of action, and because the majority of

7    Lairtrust's counterclaim has been stayed, a more definite statement is required to permit Plaintiffs

8    to frame a response." Doc. 644, June 28, 2011 Order, 4:15-27.  The court has given Lairtrust three

9    additional opportunities to fix this problem.  Yet Lairtrust continues to insistently interweave

10   causes of action based on the 2007 Settlement such that disentangling them is impossible:

11   "Defendant also committed fraud and misrepresentation when he signed and agreed to the Global

12   Settlement Agreement of July 2007 between all parties, yet thereafter sought out to void the

13   contract he expressly agreed to by claiming that FHOTOA and CEMG did not sign/agree as

14   parties to the matter, when Katakis himself was under full control of both of those institutions....

15   Plaintiff seeks to quiet title as of July 05, 2007... .Katakis also failed to abide by the terms of the

16   Global Settlement Agreement of 2007, which settled all disputes between the parties, as more

17   fully described above. Plaintiff seeks a determination by this Court that Katakis specifically

18   perform pursuant to the terms of the contract." Doc. 895, Third Amended Counterclaim, 19:16-21,

19   28:22, and 30:7-11.

20        Though the State Court Action has come to an end, Lairtrust's continual violation of court

21   orders can not be excused.  Lairtrust was warned that filing an amended pleading which did not

22   respect the bounds set by the court could result in dismissal with prejudice.  Given the history of

23   this case and Richard Sinclair's flouting of rules despite monetary sanction, this court is forced to

24   conclude that dismissal is warranted.  Lairtrust's Counterclaim is dismissed with prejudice.

25        Richard Sinclair's request to amend is denied as moot.  Plaintiffs' motions for Fed. Rule

26   Civ. Proc. 11 sanctions based on Richard Sinclair's filings associated with the request to amend

27   are also denied as moot; monetary sanctions can not compel compliance in this case and a

28   litigation sanction has been applied.

### IV. Motion on the Pleadings (Doc. 921)

Plaintiffs have made a motion on the pleadings, asking for res judicata to apply to three pleadings, the Lairtrust Action (Doc. 80), the Cross-Complaint (Doc. 425), and the Third Amended Counterclaim (Doc. 895). Doc. 922. As Lairtrust's Counterclaim is being dismissed for repeated failure to follow court orders, the application of res judicata to the Third Amended Counterclaim need not be considered. Richard Sinclair opposes the motion as "Attorney for Defendant/Cross-Claimants." Doc. 935. However, Brandon Sinclair has not filed any opposition. The court deems Brandon Sinclair to acquiesce to Plaintiffs' motion.

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. Pro. 12(c). Because the motions are functionally identical, the same standard of review applicable to a Fed. Rule Civ. Proc. 12(b)(6) motion applies to a Fed. Rule Civ. Proc. 12(c) motion. Dworkin v. Hustler Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989). Judgment on the pleadings is appropriate when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law. Ventress v. Japan Airlines, 486 F.3d 1111, 1114 (9th Cir. 2007); Honey v. Distelrath, 195 F.3d 531, 532 (9th Cir. 1999). The allegations of the nonmoving party must be accepted as true, while any allegations made by the moving party that have been denied or contradicted are assumed to be false. MacDonald v. Grace Church Seattle, 457 F.3d 1079, 1081 (9th Cir. 2006); Hal Roach Studios v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989). The facts are viewed in the light most favorable to the non-moving party and all reasonable inferences are drawn in favor of that party. Living Designs, Inc. v. E.I. DuPont de Nemours & Co., 431 F.3d 353, 360 (9th Cir. 2005); Turner v. Cook, 362 F.3d 1219, 1225 (9th Cir. 2004).

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City School Dist. Bd. of Education, 465 U.S. 75, 81 (1984). Under California law, "a party will be collaterally estopped from relitigating an issue only if (1) the issue decided in a prior adjudication is identical with that presented in the action in question; and (2) there was a final judgment on the merits; and (3) the party against whom the plea is asserted was a party or in

1  privity with a party to the prior adjudication." Clemmer v. Hartford Ins. Co., 22 Cal. 3d 865, 874

2  (Cal. 1978) (citations omitted).  "The party asserting collateral estoppel bears the burden of

3  establishing these requirements." Lucido v. Superior Court, 51 Cal. 3d 335, 341 (Cal. 1990).

4  　　　　The California Supreme Court declined to hear the appeal of the Appellate Decision; that

5  constitutes the final judgment on the merits.  The State Court Action has the same cast of parties

6  as the present case.  All Defendants were plaintiffs in the State Court Action; privity is

7  established.  Regarding the issues decided, the Appellate Decision upheld the Trial Decision,

8  finding that Defendants could not prevail on the bulk of their legal claims due to the doctrine of

9  unclean hands. See Doc. 923-22, Ex. V, Appellate Decision, 28-39.  The Appellate Decision and

10  findings of the Trial Decision that were specifically upheld by the Appellate Decision constitute

11  the issues for which res judicata applies. See Church of Scientology v. Linberg, 529 F. Supp. 945,

12  966 (C.D. Cal. 1981) ("The appellate decision has a critical bearing on the continued force of a

13  final judgment as res judicata or collateral estoppel. Once an appeal is resolved, the alternative

14  grounds raised on appeal but not decided upon by the appellate court are not essential to the

15  judgment because appellate review of the grounds omitted from the appellate court decision has

16  not been available to the litigant (or his privy) against whom the omitted ground is asserted"),

17  citations omitted; Butcher v. Truck Ins. Exchange, 77 Cal. App. 4th 1442, 1460 (Cal. App. 6th

18  Dist. 2000) ("if a court of first instance makes its judgment on alternative grounds and the

19  reviewing court affirms on only one of those grounds, declining to consider the other, the second

20  ground is no longer conclusively established").

21

22  **A. Cross-Complaint**

23  　　　　The Cross-Complaint involves claims brought by Individual Defendants against Plaintiffs.

24  Doc. 425.  Richard Sinclair asked for leave to file a First Amended Cross-Complaint to add

25  Lairtrust as a party. Docs. 659 and 723.  Judge Wanger denied the motion. Doc. 763, September 8,

26  2011 Memorandum Decision, 3:13-19.  The First Amended  Cross-Complaint was then stricken.

27  Doc. 860, September 28, 2012 Order, 10:8-9.  The original Cross Complaint (Doc. 425) is the

28  operative pleading.

1    Judge Wanger initially determined that all claims in the Cross-Complaint were stayed

2    pending resolution of the State Court Action except for "(i) Plaintiffs' alleged breach of the 2007

3    settlement agreement, and (ii) Plaintiffs' alleged conduct during and after trial of the state court

4    action." Doc. 473, January 21, 2011 Memorandum Decision, 6:14-15.  Upon further motions,

5    Judge Wanger found "As resolution of the parties' appeal before the state court will bear on

6    Plaintiffs' claims arising out of the purported 2007 settlement agreement, Plaintiffs' motions to

7    stay are GRANTED." Doc. 576, April 29, 2011 Memorandum Decision, 6:1-3.  Plaintiffs then

8    made a motion for summary adjudication, arguing that "the claims in the Cross-Complaint arising

9    out of Cross-Defendants' alleged conduct during and after the state court trial all relate to Fox

10   Hollow Lot 1. Cross-Defendants bring the present motion for summary judgment on those claims

11   since none of the Cross-Complainants owned Lot 1, and thus they lack standing to assert such

12   claims." Doc. 478-1, Plaintiffs' Brief, 4:1-4.  Judge Wanger found in favor of Plaintiffs and ruled

13   that "The CEMG/Fox Hollow Parties' Motion for Partial Summary Judgment Re Cross-Complaint

14   Claims Arising Out of Cross-Defendants' Alleged Conduct During and After Trial of the State

15   Court Action is GRANTED." Doc. 640, June 24, 2011 Order, 2:18-20.  The court then concluded

16   that "All remaining claims in the Cross-Complaint are stayed." Doc. 860, September 28, 2012

17   Order, 4:14.

18       Plaintiffs now argue that all remaining claims in the Cross-Complaint are resolved by the

19   final ruling State Court Action.  Plaintiffs point out that the Cross-Complaint (Doc. 425) is almost

20   identical to the original complaint in the State Court Action (Doc. 923-8, Ex. H).  The Cross-

21   Complaint contains 27 of the State Court Action's 28 claims.  Richard Sinclair does not appear to

22   dispute the assertion that most of the claims in the Cross-Complaint were the subject of the State

23   Court Action; instead he states "Stanislaus County Case No. 332233 was filed on April 24, 2003,

24   and covered a time period of 2000 through 2003. A Cross-Complaint was filed on July 27, 2004.

25   What happened before and after that are clearly not res judicata." Doc. 935, Richard Sinclair

26   Opposition, 1:5-7.  The only substantive additions in the Cross-Complaint as compared to the

27   State Court Action complaint are a few allegations:

28       25...One of the lenders and the predecessors in interest to Defendant Katakis

10

obtained the approval of the court to place a Receiver to operate, maintain and improve the property and the common area in Stanislaus Superior Court Case No: 287128. Mr. Ryan thereafter became the attorney for the Receiver and thereafter became the attorney for Mr. Katakis, CEMG and the Homeowner's Association

....

31. In wrongfully obtaining control of the Homeowner's Association, Defendant Katakis thereafter refused to make repairs required of by the CC&R's and Bylaws to Plaintiff's lots, but made repairs to his lots. Defendant refused to allow Plaintiffs on the FHOTOA Board of Directors and exercised complete control over the HOA.

32. Katakis thereafter advised accountants for the HOA he had hired to use inaccurate inflated numbers to assess Plaintiffs lots and thereafter wrongfully foreclosed using FHOTOA. Katakis and CEMG thereafter purchased Plaintiff lots for his own benefit which had been part of his announced plan to own all lots in the Fox Hollow Subdivision.

33. Plaintiffs and Defendants thereafter entered into a global Settlement Agreement on July 5, 2007 which was designed to resolve all differences between the parties. Defendant's counsel, Timothy Ryan, Esq. filed a Notice of Settlement in this Court on or about July 16, 2007. Plaintiffs and Defendants thereafter proceeded to complete the requirements of the Settlement Agreement. Among other things, Plaintiff proceeded to complete documentation to obtain the Department of Real Estate approval, one of the requirements set forth in the Settlement Agreement. Defendant initially assisted Plaintiff RICHARD SINCLAIR and LAIRTRUST, LLC in completing the DRE White Report and also in the purchase of the underlying notes and deed of Trust for Lot 1. Defendant Katakis had previously negotiated terms of purchase of the underlying note and deed of trust for Lot 1 for his own personal account which he turned over to Plaintiff as part of the settlement agreement. Thereafter, Defendant breached the contractual Settlement Agreement and refused to honor the terms of the settlement agreement.

34. Thereafter, Plaintiff Richard Sinclair as member manager of Lairtrust, LLC acquired legal title to Lot 1 and proceeded to request the HOA to make the required repairs to the fence and front landscaping, roof and subsequent interior damage, as well as the air conditioning which were responsibility of the HOA. Plaintiff Sinclair and Lairtrust, LLC further requested a meeting of the Homeowners Association and to be put on the Board of Directors as was required by the By Laws and CC& R's. Defendant Katakis refused and continued his sole control of the FHOTOA in violation of the CC&R's and Bylaws.

35. During this time period, there were inadequacies in the accounting and in the reserve accounts maintained by the HOA as directed by Defendant Katakis.

36. Plaintiff had paid cash for Lot 1 in 2007, and, after making repairs, obtained financing on Lot 1 in the summer of 2008. By September of 2008, Defendant Katakis had already contacted Plaintiff's lender in an attempt to purchase Plaintiff's indebtedness on Lot 1. When he was unable to do so, and had breached the Settlement agreement, Katakis assessed extra assessments on Lot 1 and then proceeded to wrongfully foreclose when he couldn't purchase the underlying indebtedness to use to foreclose. Defendant further damaged Plaintiff as part of his scheme and plan by refusing to remove a judgment lien from Plaintiff Richard C. Sinclair that Richard Sinclair had paid off years earlier despite written requests for Defendant to do so, to further damage Plaintiff.

11

1  See Doc. 425, Cross-Complaint, 9:19-23 and 11:14-13:3.

2         These allegations raise several issues, but they have all been addressed in the State Court

3  Action and the prior summary adjudication.  First, Individual Defendants bring up the involvement

4  of Timothy Ryan, Plaintiffs' attorney.  Doc. 425, Cross-Complaint, ¶¶ 25 and 33.  Defendants filed

5  a motion to have him disqualified.  Doc. 87.  Judge Dennis Beck denied the motion.  Doc. 148.

6  Similarly, the Appellate Decision upheld a denial of a motion to disqualify Timothy Ryan as

7  counsel in the State Court Action.  Doc. 923-22, Ex. V, Appellate Decision, 21-28.  There is no

8  indication that Timothy Ryan's involvement gave rise to any substantive claims.  Judge Beck

9  noted that "Defendants filed an 'amendment' to the First Amended Complaint naming Ryan as

10  Doe 1 and Ryan's former law firm as Doe 2. Plaintiffs have filed a motion to drop Ryan as an

11  improper party and Defendants have filed a statement of non-opposition. Accordingly, this

12  argument is moot. Doc. 148, May 24, 2005 Order, 4:27-28.  Second, Individual Defendants

13  discuss Andrew Katakis's control of Fox Hollow HOA, unequal repairs, and inaccurate numbers

14  for making Fox Hollow HOA assessments. Doc. 425, Cross-Complaint, ¶¶ 31, 32, 34, and 35.

15  The Trial Decision directly discussed these allegations, finding that they did not give rise to any

16  viable legal claim. Doc. 923-8, Ex. H, Trial Decision, 13-16.  The Appellate Decision discussed

17  these issues as well. Doc. 923-22, Ex. V, Appellate Decision, 13-15.  Third, Individual Defendants

18  argue that Plaintiffs violated the 2007 Settlement. Doc. 425, Cross-Complaint, ¶ 33.  The

19  Appellate Decision specifically affirmed the Superior Court's denial of a motion to enforce that

20  settlement, finding there was no meeting of the minds on several material terms. Doc. 923-22, Ex.

21  V, Appellate Decision, 21-26.  Fourth, Individual Defendants discuss Lot 1 of the Property. Doc.

22  425, Cross-Complaint, ¶¶ 33, 34, and 36.  Judge Wanger has already ruled that "none of the

23  Individual Defendants were owners of Lot 1 during the time period relevant to the remaining

24  unstayed claims asserted in the cross-complaint. As Individual Defendants lack standing to sue for

25  claims arising out of any LLC's ownership interest in Lot 1 during and after trial of the state court

26  action, Plaintiffs are entitled to summary judgment on such claims." Doc. 636, June 13, 2011

27  Memorandum Decision, 7:27-8:5.  Thus, all of the claims raised in the Cross-Complaint have

28  already been adjudicated.

**B. Lairtrust Action**

The Lairtrust Action was original brought by the LLC Defendants against Plaintiffs in Superior Court; the operative complaint is a first amended complaint, filed December 22, 2004. Doc. 80.  Plaintiffs filed an answer. Doc. 84.  It does not appear that any further action was taken with regard to the Lairtrust Action.  Plaintiffs now argue that all remaining claims in the Cross-Complaint are resolved by the final ruling State Court Action.  Richard Sinclair does not address the motion on the pleadings with regard to the Lairtrust Action. See Doc. 935, Richard Sinclair Opposition.  It is unclear whether any party has come forward to oppose this part of the motion. Nevertheless, the court will analyze the issue on the merits.

The sole cause of action contained in the Lairtrust Action is breach of fiduciary duty and duty of care:

21. [Fox Hollow HOA] has failed to perform its duties as set forth under the CC&Rs as set forth below:
a. Currently, [Fox Hollow HOA] is only attempting to collect monthly assessments from select units for present and back dues. [Fox Hollow HOA] has failed to pay attorney's fees owing for the creation of [Fox Hollow HOA] and has failed to credit those costs against dues as was directed by [Fox Hollow HOA] for the sole benefit of Andrew Katakis and CEMG.
b. Many of the units exterior doors and windows were boarded up and unsightly harming plaintiffs until such time as Mr. Katakis and CEMG owned almost all of the residential units through his wrongful actions, at which time he then began to restore and repair the units.
c. There was no insurance in place for either the buildings or the common area at Fox Hollow.
d. The common areas were overgrown and were not maintained until Mr. Katakis owned the majority, then only the units owned by Mr. Katakis were repaired by [Fox Hollow HOA] while [Defendants'] units were left in disrepair.
e. The common areas were filled with trash and broken glass and were not being maintained causing damage to [Defendants].
f. Some of the roofs were leaking and went unrepaired despite requests.
g. The individual units were deteriorating, and the eaves are rotting. The exteriors including the trim needed paint and maintenance.
h. The project sign had fallen over and was left unrepaired and unreplaced for an extended period of time despite requests to repair.
i. Common area sprinkler pipes and plumbing were left broken with water standing in landscaped areas for an extended period of time despite requests to repair.
j. The fencing was missing, dilapidated and in great need of repair for an extended period of time.
k. [Fox Hollow HOA] under the direction of Mr. Katakis, knowingly filed inappropriate liens for dues to force out [Defendants. [Fox Hollow HOA] under direction and control of Mr. Katakis as a director, fiduciary and officer foreclosed against [Defendants] wrongfully to his own personal benefit and to [Defendants']

damage and detriment.

l. Much of the landscaping had died and was left in disrepair for an extended period of time.

m. The exteriors including the trim need paint and maintenance for an extended period of time and funds were used to repair only Mr. Katakis's properties.

n. The books and records were and are not being properly kept.

o. Mr. Katakis used [Fox Hollow HOA] money and his position as officer and director of [Fox Hollow HOA] for his own personal benefit and the benefit of his corporation and to the detriment of [Defendants].

p. Mr. Katakis used his position of authority as a director and officer and controlling shareholder to his own personal benefit and to the harm and detriment of [Defendants] as minority shareholders and [Fox Hollow HOA].

q. . Mr. Katakis used his position of authority as a director and officer and controlling shareholder to exclude [Defendants] from the board of directors and from voting on key provisions, votes and changes to [Fox Hollow HOA] for the benefit solely for Mr. Katais and CEMG.

r. Mr. Katakis loaned money to [Fox Hollow HOA] and commingled money with his personal money.

s. Mr. Katakis breached his duty of care by recklessly expending vast sums of money on Fox Hollow when the monies and repairs were not needed and not authorized until Mr. Katakis misused his duty of care and position as a fiduciary. The repairs were not approved by anyone other than Mr. Katakis and no one else but Mr. Katakis benefited to the damage and detriment of [Defendants] who were minority owners and shareholders at that time. Much of this money was money that Mr. Katakis and CEMG had loaned to [Fox Hollow HOA] (for which Mr. Katakis had a conflict of interest and which Mr. Katakis had caused [Fox Hollow HOA] to become indebted to him to the detriment of [Fox Hollow HOA] and [Defendants]. Mr. Katakis in his position as a fiduciary wasted assets of [Fox Hollow HOA] and [Defendants'] assets.

t. Mr. Katakis used [Fox Hollow HOA] and his position in [Fox Hollow HOA] to wrongfully cut off water and utilities to [Defendants'] tenants, threatened and harassed [Defendants] and their employees, and interfered with [Defendants'] business and their contracts, their prospective business advantage and opportunities all to the damage of [Defendants according to proof.

....

45. The CC&Rs for Fox Hollow and the laws of the state of California impose a special relationship between the Fox Hollow HOA, its officers, directors and controlling shareholders, and [LLC Defendants].

46. The special relationship between the Fox Hollow HOA, its officers, directors and controlling shareholders (including Andrew Katakis and CEMG) and [LLC Defendants] rises to the level of Fox Hollow HOA and Andrew Katakis and CEMG as a fiduciary to [LLC Defendants]....

47. Fox Hollow's continued failure to enforce the CC&Rs, as such rules relate to the collection of dues and assessments and the performance of its duties as set forth within the CC&Rs (as set forth at length in the first cause of action) constitutes a breach of its fiduciary duty to both [LLC Defendants] and all members of the [Fox Hollow HOA]

Doc. 80, Lairtrust Action complaint, 5:26-7:23 and 13:16-14:5.  The State Court Action also

included a breach of fiduciary claim.  The allegations of the Lairtrust Action are generally

1   contained in the State Court Action complaint:

2       27. [Andrew Katakis] excluded [Defendants] from vote and participation in the
3   Homeowners Association and have allowed the property to become run down and
    in disrepair to further damage the property and its rentability and to impede the
    acquisition of loans, buyers and revenues. [Plaintiffs] have breached their fiduciary
4   duty by refusing to credit [Defendants] with dues credited pursuant to the rules of
    the Homeowners Association with the sole purpose of defeating [Defendants']
5   ownership rights. [Andrew Katakis] is breaching his duty to [Defendants], among
    other things, by not operating the Homeowners Association according to the
6   Homeowners rules, bylaws and CC&Rs; by operating said property and [Fox
    Hollow HOA] in a fashion not in the best interest of all owners, but instead in
7   [Andrew Katakis's] own best interests. [Andrew Katakis] is allowing the property
    to become run down and in disrepair making it difficult for [Defendants] to
8   continue to own and acquire, get tenants and receive rents and profits. [Andrew
    Katakis] has further advised [Defendants] tenants that he is going to own their unit
9   thereby taking the property away from [Defendants]. [Andrew Katakis] is using his
    position, improperly gained, in the Homeowners Association, among other
10  positions, to gain control of [Defendants'] property. The breach of fiduciary duty
    includes but is not limited to, ignoring requests for accountings, allowing the
11  property to fall into disrepair, allowing or causing the landscaping which is the
    responsibility of the Homeowners Association to die; leaving unrepaired broken
12  water pipes creating standing water; leaving unrepaired roofs, fences falling down,
    leaving children unattended and destroying the common area, allowing trash
13  strewn, and allowing the sign in front to lean and then fall down. [Andrew Katakis]
    has also allowed the Exteriors of the buildings to become dirty and in disrepair.
14  [Andrew Katakis] is interfering with [Defendants'] tenants and the operation of the
    [Defendants'] property and has not placed the insurance coverage required by the
15  CC&Rs.

16      ....

17      60. As hereinabove alleged, there was existing between [Defendants] and
18  [Plaintiffs] a fiduciary relationship which required certain standards and abiding by
    terms and conditions of notes and deeds of trust, Contracts and Homeowners
19  Association and not using to their advantage their position and negligently and
    intentionally and wrongfully defeating and interfering with [Defendants'] rights.
20  [Andrew Katakis] wrongfully sought to acquire and exercise control and to
    interfere with [Defendants] and to prevent [Defendants'] purchase of the property
21  and to use [Plaintiffs'] special position to acquire some of the property and
    subsequently mismanaging the property and slandering [Defendants'] title and
22  misrepresenting to others is a violation of the Covenant of Good Faith and Fair
    Dealing and a breach of [Plaintiffs'] fiduciary duty in the various roles played by
23  [Andrew Katakis].

24  Doc. 923-8, Ex. H, State Court Action complaint, 12:3-13:7 and 26:5-18.  Further, the Appellate

25  Decision directly considered the allegations that "that Katakis interfered with the GMAC contract,

26  assessed the [Fox Hollow HOA] to pay litigation attorney fees, violated the bankruptcy automatic

27  stay and temporary restraining orders, bought notes he knew were void, engaged in extortion,

28  falsified amounts [Defendants] owed [Fox Hollow HOA], formed a new [Fox Hollow HOA]

1   board without considering the existing board, mistreated and interfered with Sinclair's tenants,

2   refused to repair or maintain Sinclair's lots, wasted [Fox Hollow HOA] money, and levied

3   improper special assessment" in granting Plaintiffs' unclean hands defense. Doc. 923-22, Ex. V,

4   Appellate Decision, 37.  Thus, all of the claims raised in the Cross-Complaint have already been

5   adjudicated.

6

7   **C. Procedural Objections**

8        First, Richard Sinclair appears to argue that unclean hands is not the kind of judicial

9   finding for which res judicata applies: "This case and the standard herein is that the Sinclair group

10  'violates conscience, or good faith, or other equitable standards of conduct' and for that reason

11  they cannot collect from Katakis. It does not need to be a crime or an actionable tort. It is therefore

12  Res Judicata that Katakis is a bad guy but the Sinclair group committed acts that 'violates

13  conscience, or good faith, or other equitable standards of conduct' and therefore cannot collect

14  from Katakis. That clearly does not meet the Res Judicata standard of all issues between 1999 and

15  2003 being resolved in favor of Katakis." Doc. 935, Richard Sinclair Opposition, 2:16-22.

16  However, California courts appear to permit the application of res judicata to a finding of unclean

17  hands. See Ivan Gatz v. Marta Laughlin, 2007 Cal. App. Unpub. LEXIS 4437, *26 (Cal. App. 2d

18  Dist. May 31, 2007); cf. Cisterra Partners, LLC v. The Irvine Company, 2005 Cal. App. Unpub.

19  LEXIS 1161, *54-55 (Cal. App. 4th Dist. Feb. 9, 2005) ("the issue of Cisterra's fraud or

20  unclean hands was not litigated before Judge Haden. Thus, the doctrine of res judicata does not

21  apply and Cisterra is not collaterally estopped from litigating the issue of its fraud or unclean

22  hands in the present action against Irvine").

23        Second, Richard Sinclair appears to argue that a motion on the pleadings is not the proper

24  means by which to advance res judicata: "Plaintiffs have not submitted matters on the pleadings,

25  they have submitted matters that supposedly were brought up and decided by trial, which are not

26  matters in the pleadings that would cause this Court to grant res judicata and judgment on the

27  pleadings." See Doc. 935, Richard Sinclair Opposition, 7:8-10.  Res judicata is properly raised in a

28  motion for judgment on the pleadings. See, e.g., Turtle Island Restoration Network v. United

1  States Dep't of State, 673 F.3d 914, 920 (9th Cir. 2012); Andrews v. Daw, 201 F.3d 521, 524 n.1

2  (4th Cir. N.C. 2000) ("when entertaining a motion to dismiss on the ground of res judicata, a court

3  may take judicial notice of facts from a prior judicial proceeding when the res judicata defense

4  raises no disputed issue of fact...Because Andrews does not dispute the factual accuracy of the

5  record of his previous suit against Daw in Daw's official capacity, the district court did not err in

6  taking judicial notice of this prior case").

7      Res judicata applies to all the remaining claims in the Cross-Complaint and the Lairtrust

8  Action.  Those complaints are dismissed with prejudice.

9

10                    **V. Motion for Sever and Stay and Dismissal (Doc. 943)**

11     Richard Sinclair has made his own motion to apply the State Court Action as res judicata;

12  he and Lairtrust seek the dismissal of all claims in the Consolidated Federal Action.  Richard

13  Sinclair argues "Defendants herein have more than thirty-nine (39) Unclean Hands of Plaintiff,

14  herein, and would expect this Court to also find 'Unclean Hands' in favor of Defendants, herein,

15  against Plaintiff, just like in the [State Court Action]" and "The 'Background Facts For Claims' on

16  Pages 5-33 of the Plaintiffs' 'Consolidated Amended and Supplemental Complaint for Declaratory

17  and Injunctive Relief and for Damages' in this case, were all heard [the State Court Action]." Doc.

18  943, Richard Sinclair Brief, 4:16-19 and 5:3-6.

19     As presented by Richard Sinclair, res judicata does not work to resolve the claims of the

20  Consolidated Federal Action, which contains nine causes of action (concerning fraud, RICO,

21  unjust enrichment, accounting, constructive trust, breach of Fox Hollow HOA CC&Rs, specific

22  performance, declaratory relief, and injunctive relief) brought by Plaintiffs against Defendants.

23  See Doc. 410.  As part of the State Court Action, Plaintiffs did file a cross-complaint against

24  Defendants; the only cause of action asserted was abuse of process for amending a complaint

25  without permission. Doc. 949-4.  The Trial Decision resolved this claim in favor of Defendants,

26  finding that "The court does not and cannot conclude, based upon the evidence, that Richard

27  Sinclair intended to accomplish anything other than to amend the complaint to add CEMG and

28  Mr. Katakis as parties to the action." Doc. 923-15, Ex. H, Trial Decision, 22:26-23:1.  Plaintiffs

did not appeal this ruling.  None of the Consolidated Federal Action claims have anything to do with abuse of process.  Though the Consolidated Federal Action shares background facts with the State Court Action, the nine claims in the Consolidated Federal Action were not raised in that other case.

Richard Sinclair seeks to somehow apply the unclean hands against Plaintiffs.  However, the Appellate Decision found unclean hands on the part of Defendants, not Plaintiffs.  Specifically, the Appellate Decision stated that

> [Defendants'] contention that their unclean hands should not have precluded recovery because Katakis's misconduct was worse disregards the parties' burdens of proof at trial and the standard under which we review this issue. [Plaintiffs] pled the affirmative defense of unclean hands and produced evidence to establish [Defendants'] unclean hands misconduct in relation to the eight lots for which [Defendants] sought relief. The trial court found [Plaintiffs'] evidence persuasive and concluded that [Defendants'] unclean hands precluded recovery on every cause of action they asserted. On appeal, the only issue before this court under the applicable standard of review is whether the trial court's findings are supported by substantial evidence....As such, Katakis's behavior is irrelevant to [Defendants'] challenge to the unclean hands findings. [Defendants'] argument improperly shifts the burden of proof to [Plaintiffs] to prove Katakis's lack of unclean hands. [Plaintiffs] did not have that burden in the trial court and do not have it here.

Doc. 923-22, Ex. V, Appellate Decision, 36-37.  The State Court Action did not consider Plaintiffs' unclean hands.  Defendants may raise that doctrine as a defense in the Consolidated Federal Action, but res judicata does not establish Plaintiffs' unclean hands.

Richard Sinclair's motion for sever and stay and dismissal is denied.


**VI. Production of Documents (Doc. 905)**

Plaintiffs also seek sanctions against Defendants for failing to follow court orders regarding production of documents. Doc. 906.  The underlying request for production was originally served in December 2010; Defendants did not provide an adequate response.  In granting Plaintiffs' motion to compel, Judge Dennis Beck found that "Defendants have been afforded numerous opportunities to properly assert privileges and/or objections but have continuously refused to do so. This failure waives any assertion of privileges or other objections" and further ordered that "In providing supplemental responses, Defendants are directed to the requirements of Federal Rule of Civil Procedure 34(b)(2). Defendants must provide a response to

1   each request that specifically states either (1) Defendants have no responsive documents in their

2   possession, custody or control; or (2) Defendants are producing all responsive documents.

3   Defendants must also specifically identify all documents produced." Doc. 613, June 3, 2011

4   Order, 4:6-9 and 4:13-17.  The court then found that Defendants failed to comply and that the

5   "responses did not include any actual documents but instead consisted of boilerplate objections

6   while stating 'After a diligent search and reasonable inquiry, Defendant is unable to produce the

7   requested documents because he has no responsive, non-privileged documents within his

8   possession, custody, or control except those attached as Exhibit A which was provided in

9   Stanislaus Superior Court Case No. 332233. Discovery is continuing' or some minor variant

10  thereof." Doc. 860, September 28, 2012 Order, 9:12-17.  Defendants were given another

11  opportunity to comply.  Plaintiffs acknowledge that Defendants have produced additional

12  documents but Plaintiffs argue "none of the Responding Defendants have provided the required

13  written response to any of the requests, nor have they produced any documents responsive to any

14  of the requests or even identified the documents they have produced to a particular request.

15  Instead, Richard Sinclair on behalf of himself, Lairtrust, and Capstone simply produced some lists

16  of documents and some documents over an extended period of time. None of the purported

17  supplemental responses included a signature by any attorney or party. Brandon Sinclair, for his

18  part, provided no written responses and produced nothing." Doc. 906, Plaintiffs' Brief, 1:22-28.  A

19  review of Defendants' production supports Plaintiffs' description of the deficiencies. See Doc.

20  907.  If these documents are really all Defendants have, they must affirmatively sign a statement

21  that that is the case.

22          In his initial ruling granting the motion to compel, Judge Beck sanctioned Richard Sinclair

23  and Brandon Sinclair $3,866 in attorneys fees. Doc. 613, June 3, 2011 Order, 4:19-5:2.  The court

24  also warned that "A pattern is clearly forming. Richard Sinclair and other Defendants are warned

25  that all court orders must be obeyed or serious sanctions (both monetary and litigation) are likely

26  in the future. Doc. 860, September 28, 2012 Order, 10:3-5.  At this point, it is again evident that

27  monetary sanctions are ineffective in forcing Defendants to comply with court order.  Defendants

28  (Richard Sinclair, Brandon Sinclair, Lairtrust, and Capstone) are warned that further refusal to

1    follow Judge Beck's ruling will likely result in severe litigation sanctions, namely the entry of

2    default judgment in favor of Plaintiffs in the Consolidated Federal Action. See Fed. Rule Civ.

3    Proc. 37(b)(2)(vi).

4         Each Defendant must comply with the relevant provisions of Fed. Rule Civ. Proc. 34(b)(2)

5    and provide a signed response to each request that specifically states either (1) Defendants have no

6    responsive documents in their possession, custody or control; or (2) Defendants are producing all

7    responsive documents and specifically identify all documents produced for that request.  Again,

8    Judge Beck has ruled that Defendants are not permitted to assert privilege in responding to these

9    requests for production; any claim of privilege will be treated as a violation of court order.  All

10   Defendants must provide the ordered response within sixty (60) days of the filing of this order.

11

12        **VII. Motion to Reopen Discovery (Docs. 932, 993, and 1002)**

13        Richard Sinclair seeks to reopen discovery. Doc. 932.  Plaintiffs oppose the motion. Doc.

14   951.  Specifically, Richard Sinclair states "the Appellate Court and California Supreme Court have

15   ruled that there is substantial evidence to support that there was not a meeting of the minds

16   regarding the [2007 Settlement] as found by the trial court. Since that time, additional evidence

17   has been found which supports that not only was there a valid agreement, but that it was

18   intentionally breached by Mr. Katakis, individually and as sole director of Fox Hollow of Turlock

19   Owners Association." Doc. 932, Richard Sinclair's Brief, 11:1-7.  The State Court Action has

20   reached final resolution and is res judicata; Defendants may not use this suit to collaterally attack

21   that proceeding.  The dismissal of the Counterclaim, Cross-Complaint, and Lairtrust Action,

22   Gregory Mauchley, and Mauctrst have dramatically limited the scope of this case.  In light of these

23   changes, the motion to reopen discovery is denied without prejudice to refiling should Defendants

24   determine that the circumstances still warrant new discovery.  Plaintiffs' motion for Fed. Rule Civ.

25   Proc. 11 sanctions based on Richard Sinclair's filings associated with the motion to reopen

26   discovery is denied as moot; monetary sanctions can not compel compliance in this case and the

27   appropriate litigation sanction has been applied.

28

## VIII. Order

All motions for additional monetary sanctions are DENIED.

Plaintiffs' motion for sanctions against Lairtrust for failure to obey court order in filing the Third Amended Counterclaim (Doc. 895) is GRANTED.  The Counterclaim is DISMISSED with prejudice.

Plaintiffs' motion on the pleadings to apply res judicata to the Cross-Complaint (Doc. 425) and Lairtrust Action (Doc. 80) is GRANTED.  The Cross-Complaint and Lairtrust Action are DISMISSED with prejudice.

Defendants' motion for sever and stay and dismissal to apply res judicata to the Consolidated Federal Action (Doc. 410) is DENIED.

Richard Sinclair, Brandon Sinclair, Lairtrust, and Capstone are ordered to respond to the request for production.  Each Defendant must comply with the relevant provisions of Fed. Rule Civ. Proc. 34(b)(2) and provide a signed response to each request that specifically states either (1) Defendants have no responsive documents in their possession, custody or control; or (2) Defendants are producing all responsive documents and specifically identify all documents produced for that request.  Again, Judge Beck has ruled that Defendants are not permitted to assert privilege in responding to these requests for production; any claim of privilege will be treated as a violation of court order.  All Defendants must provide the ordered response within sixty (60) days of the filing of this order.

Defendants' motion to reopen discovery is DENIED.

The parties are urged to continue efforts to settle the remainder of this case.

IT IS SO ORDERED.

Dated:   March 28, 2014      _____
                                SENIOR  DISTRICT  JUDGE