1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD SINCLAIR, et al., | Case No. 1:03-cv-05439-AWI-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DENYING RICHARD SINCLAIR'S MOTION TO AMEND THE SCHEDULING ORDER AND STANLEY FLAKE'S MOTION TO AMEND THE SCHEDULING ORDER AND GRANTING PLAINTIFF'S MOTION FOR SANCTIONS |
| v. | |
| FOX HOLLOW OF TURLOCK OWNERS ASSOCIATION, et al., | |
| Defendants. | (ECF Nos. 1027-28, 1030, 1032-36, 1043, 1044, 1045, 1046-47, 1048-1050, 1052, 1053-54) |
| | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

Currently before the Court are Defendant Richard Sinclair's motion for leave to amend the scheduling order, Defendant Stanley Flake's motion for leave to amend the scheduling order, and Plaintiff Fox Hollow's motion for sanctions.

The Court heard oral argument on August 27, 2014. Counsel Greg Durbin and Daniel Cho appeared for Plaintiffs and Counsel Janlynn Fleener appeared telephonically for Defendant Flake, Branden Sinclair appeared telephonically in pro per and Richard Sinclair appeared telephonically in pro per and for Defendants Capstone and Lairtrust. Having considered the moving, opposition and reply papers, the declarations and exhibits attached thereto, arguments presented at the August 27, 2014 hearing, as well as the Court's file, the Court issues the

1  following findings and recommendations.

2  **I.**

3  **RELEVANT BACKGROUND**

4      The history of this action is set forth in District Judge Anthony Ishii's order issued March

5  31, 2014 and will not be repeated here.  (Order 1-4, ECF No. 1014.)  Suffice it to say that this

6  ligation has been contentious and has resulted in numerous motions and the threat of and

7  imposition of sanctions against the parties.  At this juncture, the only issue remaining is the

8  consolidated second amended complaint filed July 21, 2010 against Mauctrst LLC, Gregory

9  Mauchley, Richard Sinclair, Stanley Flake (individually and as trustee of the Julie Insurance Trust

10  and Capstone Trust), Brandon Sinclair, Lairtrust LLC, and Capstone LLC.  Plaintiffs have settled

11  with Defendants Mauctrst and Gregory Mauchley.  For the purposes of these motions, the

12  remaining defendants shall be referred to as the Sinclair Defendants (Richard and Brandon

13  Sinclair, Lairtrust and Capstone) and the Flake Defendants (Stanley Flake individually and as

14  trustee for the Julie Insurance Trust and the Capstone Trust).

15      Judge Ishii's March 31 order addressed multiple motions.  As relevant here, Judge Ishii

16  considered Plaintiffs' request for sanctions against Richard Sinclair for his failure to pay prior

17  litigation sanctions and found that further monetary sanctions would be futile.  Therefore, Judge

18  Ishii found that litigation sanctions would be applied for any additional sanctions against Richard

19  Sinclair in this action.  (Id. at 4-5.)

20      The order refers to an order issued April 5, 2013, in which the Court found that Richard

21  Sinclair had wilfully disobeyed orders of the Court on several occasions.  Specifically, only

22  Lairtrust had been granted leave to file a second amended complaint, however the second

23  amended complaint named Lairtrust, Capstone, Las Palmas and Richard Sinclair as plaintiffs.

24  (ECF No. 1014 at 5.)  Secondly, the Court found that Lairtrust had been ordered to file a second

25  amended complaint that clearly segregated the stayed claims from the non-stayed claims;

26  however, the stayed claims were intermingled throughout the second amended complaint.  (Id. at

27  6.)  Lairtrust filed a third amended complaint that did not correct the problems identified.  (Id.)

28  Judge Ishii found "[g]iven the history of this case and Richard Sinclair's flouting of rules despite

2

1  monetary sanction, this court is forced to conclude that dismissal is warranted. Lairtrust's

2  Counterclaim is dismissed with prejudice." (Id.)

3      The order also addressed the Sinclair Defendants' refusal to follow orders requiring the

4  production of documents. (ECF No. 1014 at 18-20.) Judge Ishii referred to a prior order issued by

5  Judge Beck which addressed the Sinclair Defendants' refusal to comply with the discovery rules. (Id.

6  at 19-20.) The Sinclair Defendants were warned that the failure to comply would likely result in the

7  severe sanction of entry of default judgment in favor of Plaintiffs in this action. (Id. at 19-20.) The

8  Sinclair Defendants were ordered to "comply with the relevant provisions of Fed. Rule Civ. Proc.

9  34(b)(2) and provide a signed response to each request that specifically states either (1) Defendants

10 have no responsive documents in their possession, custody or control; or (2) Defendants are producing

11 all responsive documents and specifically identify all documents produced for that request" without

12 asserting privilege. (Id. at 20.) The Sinclair Defendants were ordered to provide a signed response to

13 each discovery request within sixty days of the issuance of the order. (Id.)

14     On June 11, 2014, Richard Sinclair filed a motion for leave to amend the court schedule and

15 requesting to reinstate his dismissed counterclaim claim. (ECF No. 1027.) On June 16, 2014, the

16 Flake defendants filed a motion to amend the scheduling order to allow a dispositive motion and

17 amended answer to be filed. (ECF No. 1030.) On June 26, 2014, Plaintiffs Fox Hollow and

18 California Equity Management Group ("CEMG") filed a motion for sanctions to issue against the

19 Sinclair Defendants for failure to obey a court order. (ECF No. 1032.)

20     On August 13, 2014, Richard and Brandon Sinclair filed an opposition to the motion for

21 sanctions, the Flake defendants filed a statement of non-opposition to the Sinclair Defendants' motion

22 to amend the scheduling order, and Plaintiff filed an opposition to both motions to amend the

23 scheduling order. (ECF Nos. 1043-1050.) On August 20, 2014, Plaintiffs filed a reply to the Sinclair

24 Defendants' opposition to the motion for sanctions and the Flake defendants filed a reply to Plaintiffs'

25 opposition to his motion to amend the scheduling order. (ECF No. 1052, 1053-54.) On August 25,

26 2014, Richard Sinclair filed an untimely reply to Plaintiff's opposition to this motion to amend the

27 scheduling order. (ECF No. 1055.) On August 26, 2014, Richard Sinclair filed an untimely

28 supplemental reply. (ECF No. 1056.)

1

## II.

2

## LEGAL STANDARDS

3     **A.**    **Amendment to Scheduling Order**

4        Modification of a scheduling order requires a showing of good cause, Fed. R. Civ. P.

5 16(b), and good cause requires a showing of due diligence, Johnson v. Mammoth Recreations,

6 Inc., 975 F.2d 604, 609 (9th Cir. 1992).  If the party seeking to amend the scheduling order fails

7 to show due diligence the inquiry should end and the court should not grant the motion to modify.

8 Zivkovic v. Southern California Edison, Co., 302 F.3d 1080, 1087 (9th Cir. 2002).  To allow a

9 modification of the scheduling order without good cause would render scheduling orders

10 essentially meaningless, and directly interfere with courts' attempts to manage their dockets and

11 with the standard course of litigation in actions such as this.  Johnson, 975 F.2d at 610 ("A

12 scheduling order is not a frivolous piece of paper, idly entered . . . ." (internal quotations and

13 citation omitted)).

14     **B.**    **Reconsideration**

15        "A motion for reconsideration should not be granted, absent highly unusual circumstances,

16 unless the district court is presented with newly discovered evidence, committed clear error, or if

17 there is an intervening change in the controlling law," and it "may *not* be used to raise arguments

18 or present evidence for the first time when they could reasonably have been raised earlier in the

19 litigation."  Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th

20 Cir. 2009) (internal quotations marks and citations omitted) (emphasis in original).  Pursuant to

21 the Local Rules a motion for reconsideration must show "what new or different facts or

22 circumstances are claimed to exist which did not exist or were not shown upon such prior motion,

23 or what other grounds exist for the motion; and why the facts or circumstances were not shown at

24 the time of the prior motion."  L.R. 230(J)(3) and (4).

25     **C.**    **Sanctions**

26        Rule 37(b)(2) of the Federal Rules of Civil Procedure provides that if a party fails to obey

27 an order to provide or permit discovery, the court may issue further just orders, which may

28 include the imposition of sanctions upon the disobedient party, including dismissal of the action

1   or proceeding in whole or in part.  Fed. R. Civ. P. 37(b)(2)(A).  "[T]he court must order the

2   disobedient party, the attorney advising that party, or both to pay the reasonable expenses,

3   including attorney's fees, caused by the failure, unless the failure was substantially justified or

4   other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

5        In the Ninth Circuit, sanctions are appropriate only in "extreme circumstances" and where

6   the violation is "due to willfulness, bad faith, or fault of the party."  Fair Housing of Marin v.

7   Combs, 285 F.3d 899, 905 (9th Cir. 2002.) (quoting United States v. Kahaluu Constr. Co., Inc.,

8   857 F.2d 600, 603 (9th Cir.1988) (citations omitted)).  Disobedient conduct not shown to be

9   outside the litigant's control meets this standard.  Hyde & Drath v. Baker, 24 F.3d 1162, 1167 (9th

10  Cir.1994).  In North Am. Watch Corp. v. Princess Ermine Jewels, 786 F.2d 1447, 1451 (9th

11  Cir.1986), the Ninth Circuit held that "[b]elated compliance with discovery orders does not

12  preclude the imposition of sanctions.  Fair Housing of Marin, 285 F.3d at 905 (also citing Nat'l

13  Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643, 96 S.Ct. 2778 (1976) (per

14  curiam); G-K Props. v. Redevelopment Agency of the City of San Jose, 577 F.2d 645, 647-48

15  (9th Cir.1978)).

16       The Court has inherent power to sanction parties or their attorneys for improper conduct.

17  Chambers v. Nasco, Inc., 501 U.S. 32, 43-46 (1991); Roadway Express, Inc. v. Piper, 447 U.S.

18  752, 766 (1980); Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001).  This includes the "inherent

19  power to dismiss an action when a party has willfully deceived the court and engaged in conduct

20  utterly inconsistent with the orderly administration of justice."  Anheuser-Busch, Inc. V. Natural

21  Beverage Distrib., 69 F.3d 337, 348 (9th Cir. 1995) (quoting Wyle v. R. J. Reynolds Indus., Inc.,

22  709 F.2d 585, 589 (9th Cir. 1983)).  Because dismissal is such a harsh penalty, it should only be

23  used in extreme circumstances.  Wyle, 709 F.3d at 589.

24                                  **III.**

25                              **DISCUSSION**

26       **A.    Richard Sinclair's Motion to Amend the Scheduling Order**

27       Richard Sinclair moves to have the Court reinstate his claims and amend the scheduling

28  order to allow him to file a motion for summary judgment.  Richard Sinclair argues that his

1  claims were dismissed due to his failure to provide discovery and now that he has complied with

2  the discovery orders he should be allowed the opportunity to litigate his claims.  Initially, the

3  Court notes that the cross complaint was not dismissed as a sanction for the failure to comply with

4  the discovery orders, but for the Sinclair Defendants' failure to comply with the Court's orders

5  regarding amending the complaint.  Further, as discussed in detail below, the Sinclair Defendants

6  have not complied with the Court orders regarding discovery in this instance.

7         Richard Sinclair seeks amendment of the scheduling order under Rule 15 of the Federal

8  Rules of Civil Procedure which applies to amendment of the pleadings.  Under Rule 15(a) of the

9  Federal Rules of Civil Procedure, a party may amend the party's pleading once as a matter of

10  course at any time before a responsive pleading is served.  Otherwise, a party may amend only by

11  leave of the court or by written consent of the adverse party, and leave shall be freely given when

12  justice so requires.  Fed. R. Civ. P. 15(a).  Richard Sinclair argues that he should be granted leave

13  to amend at least once as a matter of right.

14         "Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so

15  requires.'"  Amerisource Bergen Corp. v. Dialysis West, Inc., 465 F.3d 946, 951 (9th Cir. 2006)

16  (quoting Fed. R. Civ. P. 15(a)).  However, courts "need not grant leave to amend where the

17  amendment:  (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue

18  delay in the litigation; or (4) is futile."  Amerisource Bergen Corp.,465 F.3d at 951.  As the

19  Sinclair Defendants' counterclaim has been dismissed with prejudice, any amendment would be

20  futile.

21         At this stage of the litigation, the amendment of the scheduling order is governed by Rule

22  16 of the Federal Rules of Civil Procedure which requires the moving party to show good cause

23  for the amendment.  Johnson, 975 F.2d at 609.  Richard Sinclair argues that good cause exists to

24  amend the scheduling order because he has undergone three surgeries and was required to learn to

25  walk again.

26         To the extent that Richard Sinclair seeks reconsideration of the order dismissing the

27  Sinclair Defendants' claims with prejudice as a sanction for his failure to comply with court

28  orders, "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or

fact or to present newly discovered evidence." <u>Publishers Resource, Inc. v. Walker-Davis</u> <u>Publications, Inc.</u>, 762 F.2d 557, 561 (7th Cir. 1985) (citation omitted).  Reconsideration cannot be used to argue new facts or issues that were not presented to the court in the matter previously decided.  <u>Marlyn Nutraceuticals, Inc.</u>, 571 F.3d at 880.

It is Richard Sinclair's contention that now that he has found the discovery which he was ordered to produce he has documents to support a motion for summary judgment.  However, in this instance, the discovery of these documents does not change the fact that for years Richard Sinclair has continually disregarded court orders.  Richard Sinclair's disregard for the court is further evidenced by his reply filed August 25, 2014 and his supplemental reply filed August 26, 2014.  Local Rule 230(d) provides that "[n]ot less than seven (7) days preceding the date of hearing, the moving party may serve and file a reply to any opposition filed by a responding party."

Richard Sinclair filed his reply on August 25, 2014, two days prior to the scheduled hearing and his supplemental reply on August 26, 2014, the day prior to the hearing.  Given that Richard Sinclair is facing a default sanction for failure to comply with Court orders, it is beyond comprehension why he would disregard the rules of this court in filing an untimely reply and supplemental reply.  The Federal Rules of Civil Procedure, Local Rules, and Court's scheduling orders are not mere suggestions to be set aside or disregarded at the party's whim.  <u>Tapia v.</u> <u>Woods</u>, No. 1:03-cv-05422-LJO-SMS PC, 2007 WL 3047106, at *1 (E.D. Cal. Oct. 17, 2007).  Richard Sinclair did not seek leave to file his untimely reply and supplemental reply and, as noted at the September 27 hearing, they shall be disregarded.

In his motion to amend the scheduling order, Richard Sinclair sets forth his health issues as good cause to allow the amendment, but this issue was considered by Judge Ishii and found to not excuse Mr. Sinclair's continued failure to comply with the orders of the Court.  Richard Sinclair was provided with an opportunity to address these issues prior to the sanction being imposed and improperly argues information that was available for consideration when the motion was originally decided.

Finally, despite Richard Sinclair's assertion that he was disabled, Plaintiffs have provided

1  information to establish that Richard Sinclair was continuing to actively practice through

2  February 2012.  (See Decl. of Greg Durbin, ECF No. 1027; Request to Take Judicial Notice in

3  Opposition to Motion to Reopen Discovery, ECF No. 954.)  At the August 27 hearing, Richard

4  Sinclair stated that he had not read the documents filed in opposition to his motion to reopen

5  discovery until the night prior to the hearing, even though they were filed and he was served with

6  a copy in July 2013.  Richard Sinclair argued that since he did not review this information

7  previously, it is a new fact which the Court should consider.  Richard Sinclair argues that these

8  documents misrepresent the amount of work that he was doing during the period of his disability.

9  Unfortunately, the Court finds good reason to doubt Richard Sinclair's veracity.  While Richard

10  Sinclair states that he was disabled and unable to practice, at that same time  he was able to

11  conduct a five day jury trial, (ECF Nos. 533, 957-11 to 957-16), and looking at the other evidence

12  provided by Plaintiffs it is clear that Richard Sinclair was actively practicing during this time

13  period.

14      The Court finds further reason to question Richard Sinclair's veracity by review of the

15  record in this action and his responses at the hearing.  Prior to the hearing, the Court had

16  extensively reviewed the record in these matters.  It appears to this Court that Richard Sinclair's

17  modus operandi is to disregard the orders of the Court and then later apologize claiming to have

18  misunderstood or be unable to comply due to his alleged disability.  While Richard Sinclair is

19  quick to give this excuse when confronted by the Court, he never filed a motion seeking any relief

20  from the Court due to his alleged disability.

21      Although Richard Sinclair complains that Plaintiffs to this action continued to file motions

22  for sanctions while aware of his alleged disability, the Court has repeated found that the Sinclair

23  Defendants were not compliant in their discovery responses.  The fact that the Sinclair Defendants

24  did not produce responsive documents in compliance with the previous orders is established by

25  the fact that they have now produced over 300 documents.  The Court cannot find fault with

26  Plaintiffs' continued attempts to seek sanctions when it is evident that Sinclair Defendants were

27  not complying with their discovery obligations and the orders of this court.

28      Richard Sinclair has failed to set forth grounds entitling him to reconsideration of the

8

1  order dismissing his claims with prejudice as a sanction for disobeying court orders.

2  Accordingly, good cause does not exist to amend the scheduling order and Richard Sinclair's

3  motion should be denied.

4       **B.    Motion for Sanctions**

5       Plaintiffs Fox Hollow and CEMG move to have sanctions imposed against the Sinclair

6  Defendants for failure to comply with the March 31, 2014 order of the court.  Plaintiffs contend that

7  the Sinclair Defendants did not produce documents in compliance with the March 31, 2014 order; and

8  this was the fifth time that the Sinclair Defendants have failed to comply with Judge Beck's original

9  discovery order.  Plaintiffs' request that the answers to the consolidated amended complaint be

10 stricken from the record and default entered against the Sinclair Defendants.[1]

11      Defendants Richard and Brandon Sinclair counter that they have responded to discovery as

12 ordered, all documents in their possession have been provided, and no sanctions are appropriate.

13 Further, Defendants contend that terminating sanctions are not appropriate because Plaintiffs cannot

14 prove their claims.

15      1.    Relevant Background

16      The document requests at issue here were served on the Sinclair Defendants on December

17 27, 2010.  (Decl. of Greg Durbin in Support of Motion for Sanctions ¶ 3, ECF No. 1035.)  The

18 requests sought documents covering specific transactions relevant to the claims that were

19 proceeding in this action.  (Id. at ¶¶ 8, 9, 10, 11, 12.)

20      Due to the alleged failure to comply with the discovery requests, Plaintiffs filed motions to

21 compel against Richard and Brandon Sinclair on May 11, 2011, and against Defendants Lairtrust

22 and Capstone on June 6, 2011.  (ECF Nos. 571 and 614.)

23      Magistrate Judge Dennis L. Beck issued an order granting Plaintiffs' motion to compel

24 against Richard and Brandon Sinclair on June 3, 2011.  (ECF No. 613.)  Judge Beck found that

25 Richard and Brandon Sinclair's initial and supplementary responses were "wholly inadequate and

26 demonstrate that Defendants Richard and Brandon Sinclair made no reasonable effort to respond

---

27 [1] Originally, Plaintiffs were requesting that the Court find that Richard Sinclair was not the sole owner of Capstone or
   Lairtrust during all times relevant to this action.  However, at the August 27, 2014 hearing Plaintiffs withdrew this
28 request.

to discovery as required by Federal Rule of Civil Procedure 34." (ECF No. 613 at 3-4.)  Judge Beck also found that no privilege had been asserted; there was no indication of which request documents were responsive to; and numerous documents identified in the Rule 26 initial disclosures had not been produced. (Id. at 4.)

Richard and Brandon Sinclair were directed to the requirements of Rule 34(b)(2) and were ordered, within fourteen days, to "provide a response to *each* request that specifically states either (1) Defendants have no responsive documents in their possession, custody, or control; or (2) Defendants are producing all responsive documents." (Id.) (emphasis in original).  Attorney fees of $3,886.00 were awarded as a sanction against Richard and Brandon Sinclair jointly. (Id. at 4-5.)

Judge Beck issued an order on August 11, 2011, granting the motion to compel against Defendants Capstone and Lairtrust. (ECF No. 727.)  Judge Beck found that the issues were identical to the motion brought against Richard and Brandon Sinclair and the responses suffered from the same deficiencies. (Id. at 4.)  Additionally, Defendants Capstone and Lairtrust had not produced a privilege log although they had agreed to do so. (Id.)  Judge Beck issued an order that was substantially identical to the June 3, 2011 order requiring production of documents by Lairtrust and Capstone within fourteen days. (Id. at 5.)

The Sinclair Defendants sought reconsideration of Judge Beck's orders. (ECF No. 621.)  District Judge Oliver W. Wanger held a hearing on the Sinclair Defendants' motions on August 8, 2011. (ECF No. 725.)  During the hearing, Judge Wanger specifically addressed the fact that Richard Sinclair appeared to be either incapable of understanding or unwilling to comply with the orders of the Court.[2] (Reporter's Transcript of Proceedings 4-6, 19, 24, ECF No. 731.)  The

---

[2] During the hearing the following exchanges took place:

> THE COURT: . . . And I'm going to start this by saying that -- are you taking any medication or any other type of substance, Mr. Sinclair, that gives you difficulty in understanding the Court's written orders?
> MR. SINCLAIR: Not at this time, no, Your Honor.
> THE COURT: Because it appears to me that either you choose not to accept or follow the Court's orders or else you don't understand them. And I haven't decided which it is. But under the California law, it is not open to question that the form of entity that Capstone and Lairtrust are requires two principals. And that -- and I don't mean principal owners, what I mean is two officers and directors, as those terms are defined by the California Corporations Code.

1

2

_____

3       Now, earlier in the proceedings, we had ordered that because of the potential for conflict
of interest, that the representation be separated and that you represent yourself in these proceedings

4   and any of these entities in which you are the 100 percent sole owner. And that was ordered to have
been done, quite frankly, back in -- and I don't have --

5       MR. SINCLAIR: January, Your Honor --
        THE COURT: -- in front of me. Perhaps someone can provide me the date of that order.

6       MR. DURBIN: I believe, Your Honor, that was February 8, 2010.
        THE COURT: February 8 of 2010. Now, my understanding is that on June the 30th

7   of 2011, Mr. Sinclair, you filed a motion on behalf of Lairtrust LLC, as its attorney, and that seeks
permission to file a cross-complaint.

(ECF No. 731 at 4:11-5:14.)

8

9       THE COURT: You have filed a number of declarations, none of them are under penalty of
perjury nor is there a notarial jurat indicating that the truth of them has been sworn to. And so

10   they're all inefficient -- I'm sorry, they're all insufficient as a matter of law and subject to being
stricken.

11       And so, candidly, I don't know what is going on in this case. But there is some total
breakdown in communication where you seem to either be incapable of understanding or unwilling

12   to comply with the Court's orders. And at this point, candidly, I think that we need to have a clearer
understanding of what is happening.

13       Because, candidly, not only were the previous orders of the Court violated, but now we're
in a position where the Court cannot tell, from what has been placed before it, what the ownership
of these entities is.

14       You're purporting to specially appear for Brandon Sinclair. You cannot appear for
Brandon Sinclair, you've been told that in at least five prior proceedings. You continue to do it.

15       And candidly, we endeavor to be fair and reasonable. But when attorneys constantly
violate our rules, when – and I'm talking about the Federal Rules of Procedure and the federal rules

16   of substantive law that are called for, let alone the Court's orders that have been issued, candidly,
you're painting us into a corner where you're leaving us no choice but to get your attention in a
different way.

17       And the only other way that the Court knows of to get your attention is through the
process of sanctions, quite frankly, because nothing else seems to be making any impression.

18       And again, this so-called cross-complaint appears to be a repetition of another pleading
that's already been filed. It went through a motion to dismiss. We've already ruled on it. Most of it's

19   been stayed.
        And so we seem to be, quite frankly, running in circles where you're unwilling to accept

20   the orders of the Court, you do what you want to do and, candidly, that is now going to come to an
end. Do you understand?

21       MR. SINCLAIR: Yes, Your Honor. I do understand that. . . .

(Id. at 6:8-7:22.)

22

23       THE COURT: Well, here's the concern. The law is very clear that if you are for some
reason unable to comply with the Court order by a specific time deadline, the law requires that you

24   make an application before you get to the deadline, before it expires, if you need an extension. And
just simply saying, "I have had another surgery, I'm taking medication and I can't respond," you
didn't place that before the Court and ask for an extension of time.

25       Rather, you simply let the time lapse on Judge Beck's order, didn't produce the documents.
And now when you're in total default of your obligations with no valid reason being offered,

26   because you didn't notify the Court until after the fact.
        I mean, I don't see any justifiable reason in law or in fact to reconsider Judge Beck's order.

27   It was a perfectly valid order. And there's no question that not only are the parties entitled to them,
but given what's been represented to the Court, the Court needs to see the historical ownership

28   documents for Lairstone Trust -- or Lairtrust LLC and for Capstone LLC. And there just isn't any
question about that.

11

1    Sinclair Defendants were ordered to file a copy of all documents responsive to Plaintiffs' Request

2    for Production Nos. 52 through 57, the organizational, ownership and other documents relating to

3    Lairtrust and Capstone, by August 30, 2011.  (ECF No. 763 at 3.)  From a review of the docket, it

4    does not appear that these documents were ever filed in compliance with the order.

5            On August 29, 2011, Richard Sinclair sought an extension of time to comply with the

6    order, and Brandon Sinclair filed a request for an extension of time on August 30, 2011 both

7    motions were granted in part.  (ECF No. 753, 754, 755.)  Richard and Brandon Sinclair were

8    ordered to comply with the order by September 7, 2011, and informed that no further extensions

9    of time would be granted.  (ECF No. 755.)

10           Defendants Lairtrust and Capstone did not provide any responses or request an extension

11   of time prior to the deadline, so on September 2, 2011, Plaintiffs moved for sanctions.  (ECF No.

12   756.)   Although  previously  informed  that  no  further  extensions  would  be  granted,  Richard

13   Sinclair filed a motion for an extension of time to comply on September 6, 2011.  (ECF No. 758.)

14   Judge Beck denied the request on September 7, 2011.  (ECF No. 761.)  Plaintiffs contend that no

15           And so, quite frankly, I don't see that there's any viable alternative or reasonable
16   alternative, except to deny that motion for reconsideration and to order that those documents be
     produced.
             You said you'd gathered them. Can you get them produced with the appropriate
17   verification that is required under the federal rules when a notice for production of documents has
     been sent within five days to the Court?
18   (ECF No. 19:9-20:11.)

19           MR. SINCLAIR: Your Honor, I can have them all provided by the end of this month,
             that's 21 days. 22 days.
20   (Id. at 21:23-24.)

21           THE COURT: I am going to say the Court is mindful that these have been outstanding
             since December of 2010. But where we are, quite frankly, is I am going to not finalize the order
22   except to this extent.
             I am denying the motion for reconsideration of Judge Beck's orders. I am ordering that
23   all documents be identified, pursuant to the Federal Rules of Civil Procedure, to the document
     production request as called for by that specific rule. I want to say it's Rule 33, I may be wrong
24   about that. 33 or 34.
             MR. DURBIN: 34.
25           THE COURT: I beg your pardon?
             MR. DURBIN: I believe it's 34 on the document request.
26           THE COURT: All right. 34. And is August the 30th a week day, Michelle?
             THE CLERK: Yes, it is, it's a Tuesday.
27           THE COURT: All right. August the 30th is the compliance date for the ordered
     compliance for the failure to comply.
28   (Id. at 24:15-25:9.)

1   documents were produced prior to the September 7, 2011 deadline.

2       On September 9, 2011, Plaintiffs moved for sanctions against Richard and Brandon

3   Sinclair for the failure to comply with the discovery requests.  (ECF Nos. 764-66.)  On October

4   11, 2011, this case was assigned to district Judge Anthony Ishii due to the retirement of Judge

5   Wanger.  (ECF No. 804.)  On November 18, 2011, Richard Sinclair filed a notice of disability

6   stating that he had surgery on or about September 27, 2011 and was unavailable to respond to ex-

7   parte applications or appear in court.  (ECF No. 809.)  A second identical notice of disability was

8   filed on December 28, 2011.  (ECF No. 824.)

9       The Sinclair Defendants did not provide supplemental responses or produce any

10  documents from December 6, 2011 to September 28, 2012.  (ECF No. 1035 at ¶ 14.)  Judge Ishii

11  issued an order on the motion for sanctions on September 28, 2012.  (ECF No. 860.)  Judge Ishii

12  found the Sinclair Defendants were clearly in violation of the discovery order.  (Id. at 9.)  The

13  Sinclair Defendants were ordered to fully comply with Judge Beck's orders within thirty days.

14  (Id.)  Judge Ishii noted that the "thicket of litigation in this case has become close to

15  impenetrable" but he was hesitant to issue sanctions because he was not familiar with the

16  intricacies of the action.  (Id.)  Judge Ishii did note that Judge Wanger had granted monetary

17  sanctions against Richard Sinclair in the past.  (Id.)  The order found that "[a] pattern is clearly

18  forming" and the defendants were warned that they must obey all court orders or serious

19  sanctions, both monetary and litigation, were likely in the future.  (Id. at 10.)

20      In response to Judge Ishii's September 28, 2012 order, the Sinclair Defendants served

21  some unsigned global responses and six documents related to a non-party to the action, Las

22  Palmas of Turlock, and two properties owned by the non-party.  (Id. at ¶ 19.)  On November 15,

23  2012, the Sinclair Defendants served five additional global supplemental responses that were

24  unsigned and some documents.  (Id. at ¶ 22.)  There was no information as to which requests the

25  documents were responsive.  (Id. at ¶ 23.)  On May 15, 2013, Plaintiffs received some additional

26  documents without any indication as to which requests the documents were responsive.  (ECF No.

27  1035 at ¶ 25.)

28      A motion for terminating sanctions was filed on May 20, 2013 for the Sinclair

1  Defendants' failure to comply with the September 28, 2012 order.  (ECF No. 905.)  Judge Ishii

2  issued an order on March 31, 2014 addressing several motions filed by the parties, including the

3  motion for sanctions.  (ECF No. 1014.)  Judge Ishii's order addressed a motion for sanctions

4  against Richard Sinclair for his failure to pay past sanctions.  (Id. at 4-5.)  Due to Richard

5  Sinclair's admission that "additional sanctions will not enforce compliance[,]" Judge Ishii found

6  that monetary sanctions were no longer appropriate and litigation sanctions would be imposed

7  from this time forward.  (Id. at 5.)  As a result, Lairtrust's counterclaim was dismissed with

8  prejudice as a sanction for the continual refusal to comply with court orders regarding amendment

9  of the pleading.  (Id. at 7.)

10         In addressing Plaintiffs' motion for sanctions for the failure to comply with the discovery

11  orders, Judge Ishii found that monetary sanctions would be ineffective to force the Sinclair

12  Defendants to comply with the discovery orders.  (Id. at 19.)  The Sinclair Defendants were

13  warned that further failure to comply with the orders would result in severe litigation sanctions,

14  namely default judgment in favor of Plaintiffs in the consolidated action.  (Id. at 19-20.)  The

15  order stated that:

16         Each Defendant must comply with the relevant provisions of Fed. Rule Civ. Proc.
          34(b)(2) and provide a signed response to each request that specifically states either
17         (1) Defendants have no responsive documents in their possession, custody or control;
          or (2) Defendants are producing all responsive documents and specifically identify all
18         documents produced for that request. Again, Judge Beck has ruled that Defendants
          are not permitted to assert privilege in responding to these requests for production;
19         any claim of privilege will be treated as a violation of court order. All Defendants
          must provide the ordered response within sixty (60) days of the filing of this order.
20
   (Id. at 20.)
21
          In response to Judge Ishii's March 31, 2014 order, the Sinclair Defendants sent two boxes
22
   of documents to the home address of Plaintiffs' counsel despite the fact that counsel has never
23
   used his home address in this or any other litigation to receive discovery or pleadings.[3]  (ECF No.
24
   1035 at ¶ 28.)  One box contained 124 documents and the second box contained 234 documents.
25
   (Id. at ¶ 29.)  The delivery contained responses from the Sinclair Defendants and lists of the
26

27  ─────────────────────
28  [3] The Court finds this conduct in and of itself reprehensible and completely contrary to professionalism and the
    conduct of an officer of the court.

documents in each box.  (Id.)  The written responses provided by the Sinclair Defendants were

identical for each of the document requests.  (Id. at ¶ 32.)  Each response stated:

> Defendant [name of responding party] has produced all responsive documents in
> his possession.  They include:
> > 1) All documents submitted in case no: 332233 Stanislaus Superior Court
> > Chronological Index
> > 2) Production of Documents –Supplemental (1-89)
> > 3) Production of Documents Set One (1-95)
> > 4) First Production of Documents Response (1)– Richard Sinclair (1-50)
> > 5) First Production of documents response – Richard Sinclair (1-6)
> > 6) First Production of Documents Response (1)–Richard Sinclair-Under seal–
> > Confidential– Protective Order (1-8)
> > 7) Production of Documents 2014 (1-114) –  8) Supplement (1-234)
>
> Defendants have no other responsive documents in their possession custody or
> control.

(Exhibits A through D, ECF No. 1035-1 to 1035-4.)  Plaintiffs contend that 75 of the documents

produced in the 2014 production of documents are for an apartment complex that is not related to

this action.  (ECF No. 1035 at 9 fn.2.)

> ## 2.  Defendants' Response Did Not Comply With the Court Orders

Plaintiffs contend that the written responses failed to comply with the March 31, 2014

order.  Plaintiffs assert that manner in which the written responses were prepared conceals from

Plaintiffs and the trier of fact 1) which documents produced are actually responsive to any

specific request; 2) which specific requests have no responsive documents; and 3) the full extent

of documents that have not been produced, but the Sinclair Defendants have previously admitted

they possessed.  Further, Plaintiffs contend that the written response shows that the Sinclair

Defendants have failed to produce approximately 50 documents that are in their possession and

were never provided to Plaintiffs in the state court action.  Additionally, Plaintiffs contend that the

Sinclair Defendants have not produced documents that Richard Sinclair told Judge Wanger were

in his possession and would be produced by the end of August 2011.

While the Sinclair Defendants state that their responses used the words identical to those

used by the Courts in their response, the Sinclair Defendants did not "specifically identify all

documents produced" for each individual request and identify those requests for which there are

no responsive documents.  The Sinclair Defendants have been ordered to comply with Rule 34

1   which provides that a party must respond to each item or category.  Fed. R. Civ. P 34(b)(2)(B).

2   The documents are to be produced as they are kept in the normal course of business and must be

3   organized and labelled as they correspond to the categories in the request.  Fed. R. Civ. P

4   34(b)(2)(E).  Further, Judge Ishii's March 31, 2014 order required the Sinclair Defendants to

5   specifically identify all documents that were responsive to the individual requests.  (ECF No.

6   1014 at 21.)

7        Review of the responses provided by the Sinclair Defendants show that they do not

8   comply with the orders of this court.  While the Sinclair Defendants' responses state that all

9   responsive documents have been produced and no other responsive documents are in their

10  possession, custody or control, each request for production contains the identical information,

11  listing the production of documents responses.  Based on this response, Plaintiffs are unable to

12  identify which documents are responsive to any individual request and which requests do not

13  have responsive documents.

14       Judge Ishii ordered the Sinclair Defendants to specifically identify all documents that were

15  response to the individual requests.  It is clear from review of the orders that have been issued in

16  this action that the Sinclair Defendants were to specifically identify which documents were

17  responsive to individual requests and which requests had no responsive documents.  The Sinclair

18  Defendants have not identified the specific documents that are responsive to each individual

19  request and as Plaintiffs stated at the hearing, the universe of document requests are mutually

20  exclusive.  For example, Request for Production No. 1 of each Request for Production of

21  Documents seeks:

22       The loan application, real property appraisal, purchase and sale agreement, escrow
         instructions and escrow closing statement for the purchase of the approximate
23       1.76 acres located at 152 20th Century Blvd., Turlock, CA by Stanley Flake, as
         Executive Trustee of the Julie Insurance Trust from Stockton Savings Bank;
24       evidenced by the Grant Deed recorded October 31, 1995, as Instrument No. 95-
         0087914-00 of Official Records of Stanislaus County, California.
25
26  (Brandon Sinclair's Supplemental Responses to Request for Production of Documents Set No.

    One 3, ECF No. 1035-2.)
27
         Request for Production No. 56 seeks:
28

> All account statements (whether monthly, quarterly, annually or any other periodic basis), form 1099s and cancelled checks for any checking, savings, investment or other account at any financial institution of Capstone LLC from December 3, 2001 to the present.

(Id. at 29.)

Request for Production No. 61 seeks:

> The Trust Agreement for Capstone Trust, and any amendment thereto, in effect at any time from 1998 to the present.

(Id. at 61.)

All of these requests are identical on each of the Production of Documents Request to the Sinclair Defendants. It is clear that the loan documents sought in Request for Production No. 1 would not be responsive to Requests No. 56 or 61, and vice versa. The Sinclair Defendants have again failed to comply with the orders regarding production of documents in this action.

In his opposition to the motion for sanctions,[4] Richard and Brandon Sinclair state "[t]here are no other documents that Defendants have that would support [Plaintiffs' case]. Only documents that disprove it." (R. Sinclair's Opp. to Mot. for Sanctions 8:2-3, ECF No. 1043; B. Sinclair's Opp. to Mot. for Sanctions 8:2-3, ECF No. 1044.) This leads the Court to infer that additional documents do exist that are responsive to the requests. The Sinclair Defendants may not decide which documents to produce; they must produce all responsive documents.

The Sinclairs also state they "included each item of Discovery in each answer because this matter is complex and interrelated and Sinclairs' desire to keep each document provided as a potential for an answer to each question requires that Sinclairs include in each item provided in each answer and denoted what those documents were as if set forth in the attached exhibits E through L. Sinclairs will not limit those documents until they prepare for trial." (ECF No. 1043 at 10:25-11:3; ECF No. 1044 at 8-13.) However, the Sinclairs were ordered by the Court to identify the documents that were responsive to each request. Plaintiffs' requests were specific as to the documents that were sought. For example, Plaintiffs requested production of account

---

[4] The Sinclairs devote a large amount of their opposition to arguing their position on the merits of this action which is not at issue here. It is this Court's opinion that this is an ineffective litigation tactic meant to burden the Court with unnecessary and useless argument. The Court is mindful of Richard Sinclair's tactic of not answering questions directly, but instead providing repetitive general facts irrelevant to the legal analysis.

statements, form 1099s and cancelled checks for any checking, savings, investment or other account at any financial institution of Capstone LLC from December 3, 2001 to the present. A document is either responsive or not responsive to this request and identifying the responsive documents will not "limit" the documents.

While the Sinclair Defendants object that Plaintiffs to this action did not meet and confer regarding the allegation that the responses did not comply with the Court orders, it is apparent that any such attempt would be futile. The Sinclair Defendants have willfully refused to comply with multiple orders issued by various judges in this action. Nothing in the record suggests that the discovery issues could be resolved by a meet and confer with Plaintiffs when Court orders have failed to induce compliance. The Sinclair Defendants were warned that failure to comply would result in default being entered. Plaintiffs were not required to meet and confer before bringing this motion for sanctions.

The Court next considers the appropriate sanction for this violation of the Courts' orders.

### 3.   Terminating Sanctions are Appropriate for the Sinclair Defendants' Failure to Comply

Since a terminating sanction is very severe it is only justified by "willfulness, bad faith, and fault." Connecticut General Life Ins. Co. v. New Images of Beverly Hills ("Connecticut General"), 482 F.3d 1091, 1096 (9th Cir. 2007). The Ninth Circuit has devised a five-part test to determine whether a terminating sanction under Rule 37(b)(2) is just: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Connecticut General, 482 F.3d at 1096 (citations omitted). The fifth factor contains three subparts: 1) whether the court has considered lessor sanctions; 2) whether the lessor sanctions were tried; and 3) whether the recalcitrant party has been warned about the possibility of terminating sanctions. Id.

When the sanction is being considered for violation of a court order, the first and second factors will generally support terminating sanctions and the fourth factor will weigh against default, therefore the third and fourth factors are decisive. Adriana Intern. Corp. v. Thoeren, 913

1  F.2d 1406, 1412 (9th Cir. 1990).  These factors are not a mechanical means of determining a

2  sanction, but are a way for the district court to consider whether terminating sanctions are just.

3  Valley Engineers Inc. v. Electric Engineering Co., 158 F.3d 1051, 1057 (9th Cir. 1998).

4         Based on the history of this litigation, it is apparent that monetary sanctions are not

5  sufficient to address the Sinclair Defendants' conduct in this instance.  After finding that the

6  Sinclair Defendants made no reasonable efforts to comply with their discovery obligations,

7  monetary sanctions were ordered by Judge Beck on August 11, 2011 in the form of attorney fees.

8  (ECF No. 613 at 4.)  In the August 8, 2011 hearing, Judge Wanger addressed Plaintiff Richard

9  Sinclair's inability or unwillingness to comply with Court orders in this case.  Judge Wanger

10 specifically informed Richard Sinclair that his failure to comply with orders of the court was

11 "now coming to an end."  (ECF No. 731 at 7:17-20.)

12        Judge Ishii addressed the Sinclair Defendants' failure to comply with the discovery order

13 on September 28, 2012, and found that a pattern was clearly forming.  (ECF No. 860 at 10.)

14 Judge Ishii warned the Sinclair Defendants that they must obey all court orders or serious

15 monetary and litigation sanctions were likely.  (Id.)

16        Richard Sinclair did not pay the sanction ordered by Judge Beck on June 3, 2011, and

17 Plaintiffs filed a motion for default judgment to be entered due to the failure to comply.  In

18 response to this motion, Richard Sinclair admitted that additional monetary sanctions would not

19 enforce compliance.  (ECF No. 1014 at 5.)  Therefore, Judge Ishii determined that monetary

20 sanctions would not be effective in enforcing the Sinclair Defendants to comply with the

21 discovery orders and the Sinclair Defendants were warned that the failure to comply would result

22 in default judgment in favor of Plaintiffs on the consolidated complaint.  (Id. at 19-20.)

23        Despite having Defendant Lairtrust's counterclaim dismissed as a sanction for failure to

24 comply with court orders, the Sinclair Defendants still failed to comply with the discovery order.

25 The Court finds there is no reasonable conclusion but that the Sinclair Defendants' failure to obey

26 the orders of the Court is willful and there are no sanctions available to ensure compliance with

27 the Court's orders.  Therefore, the Court considers the five part test to determine if terminating

28 sanctions are just in this instance.

1    While Richard and Brandon Sinclair argue that there is no public interest in the

2  expeditious resolution of this litigation and the Court does not need to manage its docket, the

3  public's interest in expeditious resolution of litigation and the Court's need to manage its docket

4  will generally support terminating sanctions.  Adriana Intern. Corp., 913 F.2d at 1412.  This is

5  especially true here, where this litigation has been proceeding for over eleven years and has

6  generated over 1,000 docket entries.  It is well recognized that judges in the Eastern District of

7  California carry one of  the heaviest caseloads in the nation.  A review of this action shows that an

8  inordinate amount of court time and resources have been spent on this action, much of which is

9  due to the failure to comply with Court orders.

10    Additionally, as Judge Ishii stated in his September 28, 2012 order, "the thicket of

11  litigation in this case has become close to impenetrable."  (ECF No. 860 at 9.)  This action clearly

12  falls beyond that period of delay that can be endured before the Court's docket becomes

13  unmanageable.  In re Phenylpropanolamine Products Liability Litigation, 460 F.3d 1217, 1227

14  (9th Cir. 2006).  The Sinclair Defendants' failure to comply with the discovery order has resulted

15  in the delay of resolving this action.  These two factors weigh strongly in favor of terminating

16  sanctions.

17    A party suffers prejudice where the conduct impairs the party's "ability to go to trial or

18  threaten to interfere with the rightful decision of the case."  Adriana Intern.Corp., 913 F.3d 1412.

19  While delay alone is insufficient, the failure to produce documents is considered sufficient

20  prejudice.  Id.  "The most critical factor to be considered in case-dispositive sanctions is whether

21  'a party's discovery violations make it impossible for a court to be confident that the parties will

22  ever have access to the true facts.' "  Connecticut General, 482 F.3d at 1097.

23    The Sinclair Defendants' failure to identify the documents relevant to each request and to

24  identify those requests for which there are no responsive documents undermines the ability to get

25  to the truth of the issues raised here.  Based upon a review of the relevant documents, the Court

26  finds that it is impossible to be confident that the parties can get to the true facts in this action due

27  to the Sinclair Defendants' refusal to identify and produce all documents responsive to Plaintiffs'

28  requests.

1    At the August 27 hearing, Plaintiffs argued that the Sinclair Defendants' have failed to

2  produce the documents which Richard Sinclair told Judge Wanger he had to prove the ownership

3  of Lairtrust and Capstone.   In response, Richard Sinclair suggested that there are documents

4  which were in his possession and are no longer available in this litigation.   Richard Sinclair stated

5  that he was locked out of his house with some documents held hostage by his wife during their

6  divorce and he was unable to retrieve them.   However, even if such a situation existed due to the

7  marital dissolution, that does not explain why Brandon Sinclair was unable to retrieve the

8  documents from Mrs. Sinclair.   Further, this is the exact litigation technique which the Court has

9  found to provide reason to question Richard Sinclair's veracity.   The Sinclair Defendants have

10 refused to produce documents for over three years and now that they are facing a sanction of

11 default a new excuse is produced to try to justify the failure to comply with the Court orders.

12 This denial of pertinent documents has prejudiced the Plaintiffs.

13    The record in this action leads to the conclusion that the Sinclair Defendants' conduct in

14 refusing to comply with the discovery orders threatens to interfere with the rightful decision in

15 this case.   Where the party's discovery violations make it impossible for the court to be confident

16 that the parties will ever have access to the true facts, courts have found dispositive sanctions

17 appropriate.   Valley Engineers Inc., 158 F.3d at 1058; Anheuser-Busch, Inc. v. Natural Beverage

18 Distributors, 69 F.3d 337, 354 (9th Cir. 1995).   The prejudice to Plaintiffs weighs strongly in

19 favor of a terminating sanction in this instance.

20    The public policy weighing in favor of disposition of cases on the merits generally weighs

21 against a terminating sanction.   However, Plaintiffs served these discovery requests in December

22 2010.   It is the Sinclair Defendants' willful refusal to comply with multiple Court orders over a

23 period in excess of three years that has caused the inability to dispose of this case on the merits.

24 The Court finds that this factor does not outweigh the Sinclair Defendants' culpable conduct in

25 refusing to comply with the Court orders.

26    Finally, while Richard and Brandon Sinclair argue that lesser sanctions have been

27 effective, as discussed above, lesser sanctions have been attempted and have failed to correct the

28 Sinclair Defendants' conduct.   Monetary sanctions were awarded by Judge Beck for the failure to

provide responsive documents and respond to the document requests.  Richard Sinclair admitted that further monetary sanctions would not compel compliance with the Court's orders.  (ECF No. 1014 at 5.)  Defendant Lairtrust's counter claim was dismissed with prejudice as a sanction for the Sinclair Defendants' failure to comply with Court orders.  Despite these sanctions, the Sinclair Defendants have continued to thwart the orders of the Court.  The Court finds that there are no lesser sanctions available to compel the Sinclair Defendants to comply with the discovery orders.

Finally, the Sinclair Defendants were warned of the possibility of default by Judge Wanger at the August 8, 2011 hearing (ECF No. 731 at 25:25-26:6); and most recently by Judge Ishii in his September 28, 2012 and March 31, 2014 orders.  (ECF No. 860 at 10 ("Richard Sinclair and other Defendants are warned that all court orders must be obeyed or serious sanctions (both monetary and litigation) are likely in the future.") and 19-20 ("Defendants (Richard Sinclair, Brandon Sinclair, Lairtrust, and Capstone) are warned that further refusal to follow Judge Beck's ruling will likely result in severe litigation sanctions, namely the entry of default judgment in favor of Plaintiffs in the Consolidated Federal Action.").  There is no question that the Sinclair Defendants were aware that they were facing the threat of default judgment for their failure to comply with the discovery orders issued in this case.

The Court finds "extreme circumstances" exist in this action to impose sanctions and that the violation here is due to willfulness and the fault of the Sinclair Defendants.  Fair Housing of Marin, 285 F.3d at 905.  Furthermore, the factors weigh heavily in favor of imposing a terminating sanction in this case.  The Court recommends that Plaintiffs' motion for terminating sanctions be granted and default judgment be entered against the Sinclair Defendants on the Consolidated Complaint filed July 21, 2010.

**C.    The Flake Defendants' Motion to Amend the Scheduling Order**

The Flake defendants seek leave to amend the scheduling order to allow them to file an amended answer and a dispositive motion due to the recent document production received from the Sinclair Defendants.  Plaintiffs oppose the motion on the grounds that the defendants offer no basis to show why they waited two and one half years to seek amendment.

The Flake defendants contend that there is good cause to allow them to file an amended

1    answer and to amend the scheduling order to allow them to file a dispositive motion.  The Flake

2    defendants state that current counsel took over in this action in late 2010 and was not able to

3    obtain critical evidence until after the dispositive deadline ran.   In their motion, the Flake

4    defendants argue that they recently received the discovery from the Sinclair Defendants and need

5    an opportunity to analyze the new material to see if a dispositive motion or amended answer is

6    warranted.  (ECF No. 1030-1 at 2-3.)  However, at the August 27 hearing, counsel advised the

7    Court that the new discovery has been reviewed and there are no grounds to amend the answer or

8    file a dispositive motion based upon these documents.

9         Initially, the Flake defendants contend that their original answer does not contain any

10   affirmative defenses and they move to amend the answer to add judicial estoppel based upon the

11   July 2007 settlement.  The Flake defendants contend that they were not able to fully develop the

12   defense until late 2011/early 2012.  (Id. at 9.)   Plaintiffs counter that the Flake defendants

13   dedicated 8 1/2 pages to this argument in their appellant brief dated January 3, 2012.  (ECF No.

14   1046 at 8.)  Plaintiffs also argue that the amended answer is insufficient to withstand a motion to

15   strike and amendment would be futile as any estoppel defense based on the 2007 settlement

16   agreement would be barred under the doctrine of res judicata.  (Id. at 12-33.)

17        Federal Rule of Civil Procedure 8(b)(c)(1) provides that "[i]n responding to a pleading, a

18   party must affirmatively state any avoidance or affirmative defense. . . ."  In Owens v. Kaiser

19   Foundation Health Plan, Inc., 244 F.3d 708 (9th Cir. 2001), the Ninth Circuit recognized that the

20   requirement that defendants raise their affirmative offenses in their initial pleadings has been

21   liberalized.  Id. at 713.  "The key to determining the sufficiency of pleading an affirmative

22   defense is whether it gives plaintiff fair notice of the defense."  Simmons v. Navajo County, Ariz.,

23   609 F.3d 1011, 1023 (9th Cir. 2010) (citations omitted).

24        While Rule 8 requires that affirmative defenses be pled in the responsive pleading, the

25   court has discretion to allow an affirmative defense to be raised in a subsequent motion if it does

26   not prejudice the plaintiff.  Simmons, 609 F.3d at 1023 (allowing affirmative defense where facts

27   were alleged in motion to amend answer to place plaintiff on notice of the claimed defense).

28        In this instance, the Flake defendants did not raise any affirmative defenses in this action

1   and seek to amend their answer to add the affirmative defense of judicial estoppel.  Plaintiffs were

2   not placed on notice of any such defense during the period in which discovery was open in this

3   action.   The  discovery  period  has  long  since  closed  and  Plaintiffs  would  be  prejudiced  by

4   allowing Defendants to amend the answer at this late date without the opportunity to conduct any

5   discovery.

6         Further, to the extent that the Flake defendants seek modification of the scheduling order

7   to  allow  discovery  on  this  affirmative  defense,  they  have  failed  to  show  diligence  in  seeking

8   amendment.  The Flake defendants contend that the defense was developed in early 2012.  The

9   Flake defendants submit as an exhibit a transcript of the deposition of Stanley Flake on July 12,

10  2011, and a response to production of documents received on June 15, 2011.  (ECF No. 1030-3 at

11  7-14, 20-52.)   The Flake defendants set forth their argument in a brief submitted to the Fifth

12  Circuit Court of Appeal on January 3, 2012.  (ECF No. 1047-1.)  It is clear that the Flake

13  defendants have been aware of this defense since late 2011 at the latest, but did not move to

14  amend the answer until June 16, 2014.  The Flake defendants delay in seeking to amend the

15  answer for over two and one half years does not show due diligence.  Where the party seeking

16  amendment fails to show due diligence the court should not grant the motion to modify.

17  Zivkovic, 302 F.3d at 1087.

18        Additionally, the Court agrees with Plaintiffs that the amended answer cannot survive a

19  motion to strike.  The affirmative defense pled in the amended answer merely states "Plaintiffs are

20  barred from obtaining any relief whatsoever under the doctrine of estoppel."  (ECF No. 1030 at

21  18.)   In responding to the complaint, the defendant must "state in short and plain terms its

22  defenses to each claim asserted against it. . . . Fed. R. Civ. P. 8(b)(1)(A).  An affirmative defense

23  must give the plaintiff fair notice of the defense.  Simmons, 609 F.3d at 1023.  "Fair notice

24  generally requires that the defendant state the nature and grounds for the affirmative defense.  The

25  defendant must articulate the affirmative defense clearly enough that the plaintiff is 'not a victim

26  of unfair surprise.' "  Roe v. City of San Diego, __ F.R.D. __, 2013 WL 811796, at *2 (S.D. Cal.

27  March 5, 2013) (citations omitted).  The Flake defendants have not provided fair notice of the

28  grounds for the defense.  Accordingly, allowing the amended answer would be futile.

1        The Flake defendants also contend that new counsel entered the case in 2010, and they did

2   not obtain critical documents and evidence until after the dispositive motion deadlines had run.  In

3   this case, dispositive motions were to be filed by July 15, 2011.  (ECF No. 430.)  Plaintiffs

4   counter that Mr. Sinclair and Mr. Flake worked closely together in developing Fox Hollow, as

5   decided in the state court action, and this demonstrates that the Flake defendants had these

6   documents or were aware of them.

7        Counsel for the Flake defendants submits a declaration that the review of the files and

8   copying of documents for the state trial took through December 2011.  (Decl. of Katie Konz ¶¶ 7,

9   8, ECF No. 1030-2.)  Yet, the Flake defendants did not file a motion to amend the scheduling

10  order until two and one half years later on June 16, 2014.  The Flake defendants have not shown

11  due diligence in seeking amendment of the scheduling order based on this evidence.

12       In their reply and at the hearing, the Flake defendants argue that they have not been sitting

13  idly as Plaintiffs suggest as they have been litigating other suits and matters pending against them.

14  However, the fact that the Flake defendants were litigating other actions, even those with the

15  same Plaintiffs, does not change the fact that they were not diligent in seeking amendment in this

16  action.

17       This action has been proceeding since April 4, 2003.  At some point this litigation must

18  come to an end and Plaintiffs are entitled to get their day in court.  That time has now come.

19  Accordingly, the Flake defendants' motion to amend the scheduling order to allow them to file

20  dispositive motions should be denied.

21                                              **IV.**

22                          **CONCLUSION AND RECOMMENDATION**

23       Based on the foregoing, IT IS HEREBY RECOMMENDED that:

24       1.      Defendant Richard Sinclair's motion to amend the scheduling order be DENIED;

25       2.      Plaintiffs' motion for sanctions against Richard Sinclair, Brandon Sinclair,

26               Lairtrust, and Capstone be GRANTED;

27       3.      Defendants Richard and Brandon Sinclair's answer to the amended complaint,

28               filed August 10, 2010, be STRICKEN FROM THE RECORD;

4.      Defendants Lairtrust, and Capstone's answer to the amended complaint, filed January 18, 2011, be STRICKEN FROM THE RECORD;

5.      Default be entered against Defendants Richard Sinclair, Brandon Sinclair, Lairtrust, and Capstone on the consolidated amended complaint filed July 21, 2010; and

6.      Defendant Flake's motion to amend the scheduling order and motion to file an amended answer be DENIED.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   __**August 29, 2014**__                    _____

                                    UNITED STATES MAGISTRATE JUDGE