1
2
3
4

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FOX HOLLOW OF TURLOCK OWNER'S ASSOCIATION, a California Nonprofit Mutual Benefit Corporation, et al.,**<br><br>**Plaintiffs**<br><br>**v.**<br><br>**MAUCTRST, LLC, et al.,**<br><br>**Defendants** | **CASE NO. 1:03-CV-5439 AWI SAB**<br><br>**ORDER RE: MOTION FOR NEW TRIAL**<br><br><br><br>**(Doc. 1083)** |

    This dispute arises out of a housing development known as Fox Hollow of Turlock
("Property").  Plaintiff Fox Hollow of Turlock Homeowners' Association ("Fox Hollow HOA") is
the homeowner's association.  Plaintiff California Equity Management Group, Inc. ("CEMG") is
the record owner of lots contained within the Property.  Fox Hollow HOA, CEMG, and Andrew
Katakis (collectively "Plaintiffs") are represented by the same counsel, D. Greg Durbin, and form
one side of the litigation.  Defendants Lairtrust, LLC ("Lairtrust"), Capstone, LLC ("Capstone"),
Mauctrst, LLC ("Mauctrst") (collectively "LLC Defendants") are limited liability companies that
were allegedly used to convert homeowners' association funds, effect property transfers, and
commit other acts.  Defendants Richard Sinclair, Brandon Sinclair, and Gregory Mauchley
(collectively "Individual Defendants") were principals, directors, or employees of the LLC
Defendants (collectively "Defendants").

    In 1988, Richard Sinclair and his wife purchased the Property and obtained approval from
the City of Turlock to construct a 35 unit town house complex.  They obtained a loan secured by a
deed of trust on the Property.  They built an apartment complex on the Property.  In 1992, Richard

1  Sinclair and his wife defaulted on the loan.  They obtained approval to subdivide the Property into

2  19 lots.  On June 8, 1994, Richard Sinclair filed for bankruptcy.  In 1995, Stanley Flake as Trustee

3  of the Julie Insurance Trust purchased the Property.  In 1997 or 1998, Gregory Mauchley and

4  Mauctrst acquired the Property.  Gregory Mauchley and Mauctrst obtained loans secured by the

5  individual lots on the Property from various third parties.  They fell into default on those loans.

6  Fox Hollow HOA was established in December 2000.  Plaintiffs allege the Individual and LLC

7  Defendants collected homeowners' association dues on lots already sold to help pay the cost of

8  foreclosure litigation.  Through various legal processes and foreclosure, CEMG became the owner

9  of 8 lots on the Property.  Defendants challenge CEMG's ownership based on allegations of

10 wrongful foreclosure and interference with contract.

11        This case is a consolidation of three related cases: an action commenced by Fox Hollow

12 HOA against the Individual Defendants, LLC Defendants, and Stanley Flake as Trustee of

13 Capstone Trust, Case No. CV-F-03-5439 ("Fox Hollow Action"); an action commenced by

14 CEMG against the Individual Defendants, LLC Defendants, Diana Mauchley, Deborah Sinclair,

15 Sinclair Enterprises, Inc., Stanley Flake, and Stanley Flake as Trustee of the F. Hanse Trust and of

16 the Julie Insurance Trust Case No. CVF- 03-5774 ("CEMG Action"); and an action commenced

17 by the LLC Defendants against Plaintiffs in the Stanislaus County Superior Court, Case No.

18 322675 ("Lairtrust Action").  These actions were removed to this court and consolidated on

19 October 6, 2003.  The main operative complaint ("Consolidated Federal Action") traces back to

20 the CEMG Action and Fox Hollow Action. Doc. 410.  The primary subject matter of the

21 Consolidated Federal Action concerns allegations that Defendants used the Fox Hollow HOA in

22 violation of the Racketeering and Corrupt Organizations Act.  Defendants had three complaints

23 alleging causes of action against Plaintiffs.  The LLC Defendant filed the Lairtrust Action. Doc.

24 80.  The Individual Defendants filed a document termed a cross-complaint ("Cross-Complaint")

25 against Plaintiffs. Doc. 425.  Lairtrust filed a counterclaim ("Counterclaim") against Plaintiffs.

26 Doc. 471.

27        This federal case has proceeded in parallel to a related state court case (Stanislaus County

28 Superior Court, Case No. 332233, originally filed on April 24, 2003) in which the Individual

1   Defendants and LLC Defendants filed suit against Plaintiffs ("State Court Action").[1]  Plaintiffs

2   also filed a cross-complaint against Richard Sinclair, Gregory Mauchley, and Mauctrst for abuse

3   of process.  The State Court Action dealt with the substance of the dispute between the parties (the

4   foreclosure process, ownership of the individual lots on the Property).  The parties filed a notice of

5   settlement on July 16, 2007 ("2007 Settlement"). Doc. 303.  Though the 2007 Settlement was

6   meant to resolve all issues in both federal and state court cases, it did not accomplish that purpose.

7   In the State Court Action, it was determined that the 2007 Settlement was unenforceable.  A 36

8   day bench trial was held, starting on December 9, 2008.  On August 18, 2009, the Superior Court

9   issued its judgment, finding in favor of the defending parties on all claims; that court found in

10  favor of Plaintiffs on the main complaint and Defendants on the cross-complaint. Doc. 433, Part 8.

11  The parties appealed.  On January 23, 2013, the Fifth District Court of Appeal issued an opinion

12  affirming the trial court decision, largely on grounds of unclean hands. Doc. 923-22; Sinclair v.

13  Katakis, 2013 Cal. App. Unpub. LEXIS 509 (Cal. App. 5th Dist. Jan. 23, 2013).  On April 10,

14  2013, the California Supreme Court denied the petition for review. Sinclair v. Katakis, 2013 Cal.

15  LEXIS 3119 (Cal. Apr. 10, 2013).

16      It was determined earlier that Defendants' claims against Plaintiffs involved issues being

17  litigated in the State Court Action; the court ordered a stay on the parts of this case related to those

18  issues. Docs. 473 and 563.  After the State Court Action reached a final resolution, the Lairtrust

19  Action and Cross-Complaint were dismissed due to res judicata. Doc. 1014.

20      Throughout the long history of this case, multiple judges have sanctioned Defendants

21  (Richard Sinclair in particular) for failure to follow rules and court orders.  The Counterclaim

22  contained a mix of stayed and unstayed claims; District Judge Oliver Wanger ordered Lairtrust to

23  file an amended pleading to clarify that distinction. Doc. 667.  Lairtrust's first amended

24  Counterclaim complaint did not obey the earlier order; Lairtrust was again ordered to file an

---

25

26  [1] The Plaintiffs in this case are defendants in the State Court Action while Defendants are
    plaintiffs in that case.  When quoting from documents of the State Court Action, the court has
    changed the references to conform with the status of the parties in this federal case in an attempt to
27  avoid confusion.  Plaintiffs are always Andrew Katakis, CEMG, and Fox Hollow HOA or some
    subset thereof.  Defendants are always Richard Sinclair, Brandon Sinclair, Gregory Mauchley,
28  Lairtrust, Capstone, and Mauctrst, or some subset thereof.

1  amended pleading that explicitly distinguished between the stayed claims and the unstayed claims.

2  Doc. 860.  Lairtrust's second amended Counterclaim complaint again failed to follow the court's

3  direction; Lairtrust was given one last opportunity to obey and specifically warned that failure to

4  comply would result in dismissal of the Counterclaim as a litigation sanction. Doc. 891.  The third

5  amended Counterclaim complaint again flouted the court's earlier orders; consequently, the

6  Counterclaim was dismissed with prejudice. Doc. 1014.

7       Plaintiffs made a request for production in December 2010.  Defendants did not provide an

8  adequate response.  In June and August 2011, Magistrate Judge Dennis Beck granted Plaintiffs'

9  motions to compel, ordering Richard Sinclair, Brandon Sinclair, Lairtrust, and Capstone

10 (collectively "Sinclair Defendants") to provide supplemental responses to each request for

11 production. Docs. 613 and 727.  Additionally, Judge Beck sanctioned Richard and Brandon

12 Sinclair for not acting in good faith in trying to resolve the discovery dispute. Doc. 613.  Richard

13 Sinclair sought reconsideration of the order. Doc. 621.  Judge Wanger denied reconsideration.

14 Doc. 763.  On September 28, 2012, this court found that the Sinclair Defendants had not yet

15 complied with the discovery orders and warned that serious monetary and litigation sanctions

16 would be imposed for continued disobedience on this issue. Doc. 860.  After receiving some

17 additional documents, Plaintiffs made another motion for sanctions on this matter. Doc. 905.

18 On March 31, 2014, this court found that the Sinclair Defendants had not yet completely

19 responded to the request for production; however, as they had taken some steps to comply,

20 sanctions were not imposed at that time. Doc. 1014.  The Sinclair Defendants provided more

21 documents and Plaintiffs made another motion for sanctions. Doc. 1032.  On August 29, 2014,

22 Magistrate Judge Stanley Boone concluded that Sinclair Defendants had, once again, failed to

23 comply with the discovery orders and recommended that default judgment against them be granted

24 as a litigation sanction. Doc. 1060.  That Findings and Recommendation was adopted in full; the

25 Sinclair Defendants' answers to the Consolidated Federal Action were stricken from the record

26 and default was entered against them. Doc. 1070.

27       Meanwhile, Plaintiffs settled their dispute with Stanley Flake, individually and in his

28 capacity as Trustee of the Julie Insurance Trust and the Capstone Trust. Doc. 1179.  Plaintiffs also

4

1    settled their dispute with Gregory Mauchley, Diana Marchley, and Mauctrst. Doc. 1009.  The

2    parties agreed to that default would be entered against Mauctrst on the Consolidated Federal

3    Action. Doc. 1013.  Gregory Mauchley has filed for bankruptcy. Doc. 981. Richard Sinclair has

4    also filed bankruptcy. Doc. 1078.  However, the bankruptcy court has lifted the automatic stay

5    with regards to this case and is permitting claims against Richard Sinclair to proceed in this case.

6    Doc. 1091.  At this point, the only remaining claims involve the Consolidated Federal Action.

7    Default has been entered against the Sinclair Defendants and Mauctrst.  The parties must have a

8    trial for proving the amount of damages.

9        Now, Richard Sinclair has made a motion for a new trial pursuant to Fed. Rule Civ. Proc.

10   59. Doc. 1083, 7:22-8:12.  However, Rule 59 applies after a trial has been held and judgment

11   entered.  There has been no trial in this case.  In terms of the relief requested, Richard Sinclair

12   states "The Court should reinstate Sinclair's answer and Cross Complaint, or reinstate the

13   Settlement Agreement which Katakis lied about to get removed, and then dismiss this case." Doc.

14   1083, 34:12-15.  The court will treat this as a general request for reconsideration based on

15   allegations of fraud on the court.

16       Regarding Richard Sinclair's arguments for reconsideration of orders in this case, Fed. R.

17   Civ. Proc. 11 and 60(b)(3) "provide means for federal courts to remedy and deter the perpetration

18   of fraud on the courts." Barlow v. Colgate Palmolive Co., 772 F.3d 1001 (4th Cir. 2014).  Fed. R.

19   Civ. Proc. 60(d) also specifically notes that "This rule does not limit a court's power to....(3) set

20   aside a judgment for fraud on the court."  Fraud on the court is "an unconscionable plan or scheme

21   which is designed to improperly influence the court in its decision.  The motion to set aside on this

22   ground is addressed to the sound discretion of the trial court.  And the burden is on the moving

23   party to establish fraud by clear and convincing evidence." England v. Doyle, 281 F.2d 304, 309-

24   10 (9th Cir. 1960), citations omitted.  "'Fraud upon the court' should, we believe, embrace only

25   that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by

26   officers of the court so that the judicial machinery can not perform in the usual manner its

27   impartial task of adjudging cases that are presented for adjudication." Alexander v. Robertson, 882

28   F.2d 421, 424 (9th Cir. 1989), citing 7 J. Moore & J. Lucas, Moore's Federal Practice ¶ 60.33, at

515 (2nd ed. 1978).  "Fraud between the parties and fraud on the court are two distinct bases for post-judgment relief.  Fraud on the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties....Generally speaking, only the most egregious conduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated will constitute a fraud on the court. Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court." Zurich N. Am. v. Matrix Serv., 426 F.3d 1281, 1291 (10th Cir. 2005), citing United States v. Buck, 281 F.3d 1336, 1342 (10th Cir. 2002) and Weese v. Schukman, 98 F.3d 542, 552-53 (10th Cir. 1996).  "Non-disclosure, or perjury by a party or witness, does not, by itself, amount to fraud on the court." Appling v. State Farm Mut. Auto. Ins. Co., 340 F.3d 769, 780 (9th Cir. 2003), citations omitted.  But, a combination of "misleading, inaccurate, and incomplete responses to discovery requests, the presentation of fraudulent evidence, and the failure to correct the false impression" can constitute fraud on the court. Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128, 1132 (9th Cir. 1995).

The vast majority of Richard Sinclair's fraud on the court allegations involves the proceedings in the State Court Action.  Again, Richard Sinclair seeks to reinstate the 2007 Settlement. Doc. 1083, 20:17-19.  The California courts in the State Court Action have already definitively determined that the 2007 Settlement is not enforceable.  This court will not collaterally undermine that full and final decision.  "Federal courts have expressed hostility to the proposition that a mere allegation that a previous judgment was obtained by 'fraud on the court' defeats the defense of res judicata.  The federal courts will not entertain a collateral attack on a state judgment on the basis of 'fraud on the court' in an action for damages....The proper avenue for relief by a party who believes that a previous judgment was procured by fraud on the court is for the party to bring a post-judgment motion or an independent action in equity to vacate the judgment.  The universal rule in the federal courts, however, is that an equitable action to set aside a judgment may only be heard by the court whose judgment is challenged." Lamie v. Wright, 2014 U.S. Dist. LEXIS 59322, *32-33 (W.D. Mich. Mar. 14, 2014), citations omitted.

Regarding the allegations in this case, Richard Sinclair argues that "Katakis and Durbin

1   took the disabled attorney Sinclair and plummeted him with discovery knowing that he was

2   disabled and unable to answer.  With that, he received terminating sanctions, preventing the Court

3   from hearing of Katakis bad behavior." Doc. 1083, 17:17-19.  Richard Sinclair states

> Sinclair started to become a quadriplegic and had 4 major skeletal surgeries over 3 ½ years and had to re-learn how to walk 4 times in between.  Sinclair is ok now, but in the process, even though Judge Wanger in his February 5, 2010 order said 'Sinclair is disabled' which should stop court proceedings, Katakis and Durbin continued....
>
> Durbin thereafter amended his federal court case and proceeded to flood Sinclair with discovery even though he knew Sinclair was disabled.  Sinclair couldn't answer.  Durbin, without telling the court of ANDREW KATAKIS criminal fraud to win, or that Katakis already made $6.5 million, obtained discovery orders withdrawing Sinclair Cross Complaint and withdrawing Sinclair Answer so that he could obtain a default against Sinclair and keep the case away from the federal court.

12   Doc. 1083, 33:3-15.  The orders Richard Sinclair seeks relief from were imposed as litigation

13   sanctions.  While Richard Sinclair might not initially have been able to respond to the discovery

14   requests due to health issues, he has been given multiple opportunities over a period of years to

15   comply with the discovery orders.  Instead, Defendants (and Richard Sinclair in particular) have

16   flouted the orders of the various District Judges and Magistrate Judges assigned to this case.

17   Monetary sanctions were imposed and had no effect.  Defendants were specifically warned that

18   terminating sanctions would be imposed for continued violation before that sanction was imposed.

19   Richard Sinclair's failure to follow court orders is not limited to this court.  California

20   State Bar Court Judge Pat McElroy held a five day trial and found Richard Sinclair guilty of four

21   charges of professional misconduct having to do with several cases including this one; Judge

22   McElroy ordered Richard Sinclair put on involuntary inactive status with a recommendation for

23   disbarment.  Relevant to Richard Sinclair's claims that Plaintiffs took advantage of his medical

24   issues to engineer his violation of discovery orders, Judge McElroy stated

> [Richard Sinclair] asserted that beginning in 2008 he had four major skeletal surgeries and had to re-learn how to walk on various occasions. While respondent presented evidence of his medical history, including his four surgeries, his last two surgeries were on March 11, 2011, and September 27, 2011, well before the present misconduct. The note from the doctor as to the September 27, 2011 surgery states that respondent should not engage in work for ten days.... Daniel Durbin, an attorney for Katakis, gave reliable testimony in the present matter that during the

period of August 2010 through June 2011, respondent filed 22 complaints, amended complaints, cross complaints, answers, or petitions; filed 44 disclosure motions or applications, notices of appeal or removal, and appellate briefs; opposed 25 motions or applications; made at least 27 court appearances; and conducted a 5-day jury trial. As proof of the 5-day jury trial, Durbin presented court records. On the other hand, respondent claims to have no memory of a jury trial in April 2011.

State Bar Court of California San Francisco Hearing Department, In the Matter of Richard Carroll Sinclair Member No. 68238, Case No 13-O-10657-PEM, July 28, 2015 Order, pages 28-29, publically available at http://members.calbar.ca.gov/courtDocs/13-O-10657-2.pdf.  Richard Sinclair's surgeries took place 2008-2011; as outlined above, his refusal to follow court orders took place after that time.  Indeed, Richard Sinclair asserts "I have been disabled from December 2008 (during the trial of [State Court Action] in which Andrew Katakis' defense of Unclaean Hands was successful) through 2013." Doc. 1089, at 26.  On March 31, 2014, this court gave Richard Sinclair a final chance to provide the contested discovery. Doc. 1014.  By Richard Sinclair's own version of facts, he was no longer disabled at that time.  Yet, he again provided inadequate responses to the request for production and was consequently sanctioned. Doc. 1070. Any failure to comply with the discovery orders was not due to a medical condition or maneuvering by Plaintiffs.

Richard Sinclair's motion is DENIED.

IT IS SO ORDERED.

Dated:   August 24, 2015                          _____

                                        SENIOR  DISTRICT  JUDGE